52 A.3d 1233

## NEWMAN DEVELOPMENT GROUP OF POTTSTOWN, LLC, Appellee

v.

## GENUARDI'S FAMILY MARKETS, INC. and Safeway Inc., Appellants.

Supreme Court of Pennsylvania.

Argued April 11, 2012.

Decided Sept. 28, 2012.

Charles Lyman Becker, Kline & Specter, P.C., Philadelphia, for Amicus Curiae, PA Association for Justice.

David R. Fine, K & L Gates, L.L.P., Harrisburg, for Amicus Curiae, Beck, Becker, Craven, Giurintano, Hare, Johnson, Krill, Jr., Lally–Green, Must, Sargent, et al.

Sara Anderson Frey, Cozen O'Connor, Kim Kocher, White and Williams, L.L.P., Thomas G. Wilkinson, Jr., Cozen O'Connor, Philadelphia, for Amicus Curiae, PA Bar Association.

Rudolph Garcia, Philadelphia, for Amicus Curiae, Philadelphia Bar Association.

Howard J. Schulberg, Goehring, Rutter & Boehm, Pittsburgh, for Amicus Curiae, Allegheny County Bar Association.

Robert L. Byer, Duane Morris, L.L.P., Pittsburgh, Katrin C. Rowan, Carl A. Solano, Nancy L. Winkelman, Schnader Harrison Segal & Lewis, L.L.P., Philadelphia, for Genuardi's Family Market, Inc. and Safeway, Inc.

Thomas A. Riley Jr., Jeanette N. Simone, Riley, Riper, Hollin & Colagreco, P.C., Exton, for Newman Development Group of Pottstown.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Chief Justice CASTILLE.

This appeal presents a discrete issue of post-trial procedure governed by Rule 227.1 of the Pennsylvania Rules of Civil Procedure, which requires a party to file posttrial motions with the trial judge within ten days of certain enumerated events, with the failure to so file resulting in the significant consequence of a waiver of issues on appeal. The specific question presented is whether a party must file post-trial motions in a remand scenario—here, a circumstance where, on remand from the Superior Court, the trial court recalculated a damage award without receiving any additional evidence from the parties. The Superior Court quashed appellants' appeal from the trial court's recalculated damages order, holding that appellants had waived all claims by failing to file a second

round of post-trial motions. Also implicated in this matter is the fact-bound question of whether a trial occurred on remand, thereby triggering the post-trial motion procedure contemplated by Rule 227.1. For the reasons that follow, we find that the panel erred in deeming appellants' claims to be waived for non-compliance with Rule 227.1. Accordingly, we vacate the quashal order below and remand for consideration of the merits.

Genuardi's Family Markets, L.P. is the successor in interest to Genuardi's Family Markets, Inc. ("Genuardi's"), and a division of Safeway, Inc. ("Safeway" or collectively with Genuardi's "appellants"). Newman Developmental Group of Pottstown, LLC ("Newman" or "appellee") is a real estate development company comprised of Marc Newman, David Newman, Barry Newman, Michael Wachs, and three members of the Akel family.

In 1996, Wachs identified a potential site consisting of six separate parcels at the intersection of Cedarville Road and Route 100 in North Coventry Township, Chester County, as a location to construct a shopping center to be known as Town Square Plaza. Newman entered into agreements of sale for the six properties contingent upon Newman's ability to construct the shopping center at the site. Newman applied to the Township for the necessary rezoning to permit a shopping center on the properties, which resulted in significant public opposition against the plan.

Meanwhile, in 1998, before the necessary zoning was in place and before Newman had legal title to the properties, Newman began negotiations with several grocery store chains, among them Genuardi's, which signed a letter of intent to lease space in the shopping center in June of 1998. On April 14, 2000, Genuardi's and Newman entered into an Agreement of Lease ("lease") for space in Town Square Plaza. Because Newman had equitable title pursuant to the agreements of sale but not legal title to the properties, the lease included provisions relating to the construction of the shopping center, including time frames for specific stages of construction. Section 6.4 of the lease provided that, if building permits were not

issued by January 1, 2001, or the footings and foundations of the building were not completed and steel erected by May 1, 2001, or if the delivery date of the property did not occur before September 1, 2001, Genuardi's would have the option to extend the completion date or, upon notice to Newman and after Newman's failure to comply within an additional thirty-day period, terminate the lease.

In the course of negotiations, Newman indicated to Genuardi's that meeting the dates for the stages of construction might be problematic; therefore, the parties agreed to hold the lease in escrow in order to grant Newman an extension of time if necessary to complete the project. Counsel for both parties, through the exchange of correspondence, established an escrow agreement whose purpose was to commit the parties to the Town Square Plaza project without obligating Newman to adhere to a construction schedule that both parties knew to be unrealistic. The escrow agreement, as it emerged from the correspondence, provided that the lease would be held in escrow by Genuardi's pending Newman's entering into a lease agreement or agreement of sale with either Target or Lowe's Home Center to serve as the shopping center's anchor tenant; but that, if such a lease agreement or agreement of sale was not executed within one year of the closing of the sale of the properties to Newman, Genuardi's reserved the right to terminate the lease upon notice to Newman. In the event of a delay in the closing that affected the construction schedule set forth in Section 6.4 of the lease, the parties would discuss amending the completion dates to reflect a reasonable schedule.

In December of 2000, Genuardi's notified Newman by letter that Safeway planned to acquire Genuardi's business and requested an acknowledgment that, once Safeway assumed the lease, Genuardi's would be released from further obligations under it. Marc Newman signed the letter acknowledging the assignment and returned it to Genuardi's counsel. Safeway purchased Genuardi's in February of 2001, and, that same month, representatives of Safeway and Newman met to dis-

cuss moving forward and with timelines for approvals for the project.

On February 13, 2002, counsel for Safeway sent Newman a letter notifying Newman of Safeway's intent to terminate the lease due to noncompliance with the completion dates set forth in Section 6.4 of the lease. The letter specifically stated that Newman had failed to obtain building permits prior to January 1, 2001, did not complete the footing and foundation or erect structural steel by May 1, 2001, and failed to deliver the property to Safeway by September 1, 2001. At the time the letter was sent, Donald Wright, Safeway's senior vice president of real estate and engineering, who authorized the termination letter, was unaware of the escrow agreement and had not seen the documents establishing that agreement. The following day, February 14, 2002, Newman's counsel apprised Safeway's counsel by letter of the escrow agreement and stated that neither party had the right to terminate the lease at that time. Safeway responded to Marc Newman that Newman's obligations under Section 6.4 of the lease were independent of the co-tenancy requirement regarding Target or Lowe's Home Center that was the subject of the escrow agreement and reiterated that Safeway intended to terminate the lease.

On March 20, 2002, Newman filed the instant lawsuit against appellants alleging an anticipatory breach of the lease agreement and asserting claims in equity for quantum meruit and promissory estoppel based on the assertion that appellants had no right to terminate the lease agreement. Newman then sought replacement tenants and eventually obtained commitments from PetSmart and Michael's Arts and Crafts ("Michael's") to occupy the space previously reserved for Genuardi's. Newman obtained zoning approval and construction permits for the shopping center and closed on the agreements of sale for the properties in March of 2004. Lowe's signed a lease with Newman on the date Newman acquired the site. On December 28, 2005, Newman sold the shopping center to Inland Real Estate Acquisitions, Inc.

Meanwhile, on October 3, 2005, this matter proceeded to a nonjury trial before the Honorable William P. Mahon that consisted of ten days of testimony taken from October 2005 to January 2006.[1] Judge Mahon found that appellants had breached the lease agreement with Newman. He determined that Newman was entitled to rent from appellants from June 25, 2005 until Newman sold the shopping center on December 28, 2005. The court awarded Newman $131,277 in damages, which represented the difference between the amount of rent owed by appellants and the rent Newman actually received from PetSmart and Michael's over the same period.

Both parties filed post-trial motions. As pertinent here, Newman claimed that the trial court erred in calculating damages only until December 28, 2005, rather than awarding damages based on the entire twenty-year term of the lease. The trial court ruled that Newman was entitled only to the difference in rental income between that anticipated under the lease and the rent paid by PetSmart and Michael's for the period of time during which it owned the property. However, the court found that it had miscalculated the rental loss from June 25, 2005 through the date of the sale because PetSmart and Michael's did not begin paying rent until December 1, 2005. Thus, the court recalculated the loss to Newman to include full rent from June 25 through December 1, 2005, and, on December 19, 2006, amended the verdict, awarding Newman damages in the amount of $316,889.92, exclusive of contractual counsel fees, expenses and costs.

Newman appealed to the Superior Court, and appellants cross-appealed. Appellants challenged the trial court's finding that they breached the lease agreement with Newman as well as Newman's entitlement to damages; the panel affirmed the trial court's decisions in this regard. Newman renewed the argument made in its post-trial motions, claiming that the trial court erred in not applying the measure of damages outlined in Section 20.2.2 of the lease, entitled "Reletting," which

---

1. The dates of the trial were October 3, 4 and 6, 2005, November 7, 9 and 10, 2005, and January 17–20, 2006.

provided for damages equal to the loss of rental income over the entire twenty-year term of the lease.[2]

The Superior Court panel agreed. The panel described the operation of Section 20.2.2:

> When applied to an abandonment of the lease by Safeway, section 20.2.2 measured (1) Newman's expectation interest in the contract as the total rent owed over the term of the entire lease, (2) the loss caused by the difference between the rent promised by Safeway and the rent ultimately received from the substitute tenants, and (3) the costs attendant to the effort to secure substitute tenants. In short, the formula agreed to by Newman and Safeway provided compensation in the form of the actual damages caused by Safeway's total breach of the lease agreement.

Super. Ct. Op., 4/25/2008 at 17. The panel held that the trial court erred in failing to award damages in accordance with the lease terms, vacated the trial court's judgment, and remanded for proceedings consistent with its memorandum opinion.

On remand, the parties filed legal memoranda and presented oral argument, but the trial court received no additional evidence on damages. In its opinion on remand, the trial court noted that the parties argued "that there is no need nor is it appropriate to take additional evidence in this matter." Tr. Ct. Op., 1/25/2012 at 1. The trial court, on the record

2. Section 20.2.2 provided in part:

 **Reletting:** Without terminating this Lease, [Newman] may re-enter and repossess the Leased Premises, or any part thereof, and lease them to any other Person upon such terms as are reasonable, for a term within or beyond the Term [set forth in the lease agreement]. Any such reletting shall be for the account of [Safeway], and [Safeway] shall remain liable for this excess (if any) of (a) all Rent which would be payable under this Lease by [Safeway] in the absence of any such repossession; over (b) the proceeds, if any, of any reletting effected for the account of [Safeway] after deducting from such proceeds any Reletting Expenses ... No repossession of the Leased Premises or any part thereof pursuant to this section 20.2.2 shall relieve [Safeway] of its liabilities and obligations hereunder, all of which shall survive such repossession, and [Newman] may, at its option sue for and collect all Rent and other charges due hereunder at any time when such charges accrue.

 Lease Agreement, § 20.2.2.

before it, then recalculated the damages in accordance with Section 20.2.2 of the lease and determined that:

> Based upon this clear language and the holding in the Superior Court's decision, [Newman] has established an expectation interest in total rent over the entire twenty (20) year term of the lease with Safeway in the amount of $15,104,960. The record further supports that [Newman] entered into leases with replacement tenants for a period of only ten (10) years in an amount of $4,610,470. This amount, when subtracted from total expected rent, equals a net damages amount of $10,494,490 in rent expectation damages. There are also brokerage commission costs for the replacement tenants of $30,808 proven by [Newman] to secure the substitute tenants in this matter.

*Id.* at 2 (footnotes and record citations omitted). The trial court further determined that it would award reasonable counsel fees and expenses pursuant to the lease in an order to follow the opinion. On February 25, 2010, the trial court entered a molded judgment in favor of Newman in the amount of $18,489,221.60,[3] which included counsel fees and expenses to date, and stated that counsel fees and costs would be recalculated at the conclusion of the appellate process or thirty days from the entry of the judgment if no appeal was taken.

Appellants appealed the new judgment to the Superior Court, raising a number of challenges to the trial court's calculation of damages, *i.e.*, the failure to discount to present value, the failure to consider mitigation of damages for the second half of the twenty-year lease, and the proper determination of prejudgment interest. In a published opinion, the Superior Court quashed the appeal, finding that appellants had waived all issues by failing to file new post-trial motions pursuant to Pa.R.C.P. 227.1(c). Rule 227.1(c) requires that:

> (c) Post-trial motions shall be filed within ten days after
>
> (1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or

---

**3.** The total consisted of $10,494,490 in expectation damages, $30,808 in reletting expenses, $6,279,734.26 in interest, and $1,684,189.34 in attorney's fees, costs and expenses with interest.

(2) notice of nonsuit or the filing of the decision in the case of a trial without jury.

The panel rejected appellants' argument that, given the procedural posture of this case, Rule 227.1(c) neither requires nor allows for the filing of post-trial motions because the proceeding on remand did not constitute a trial. In the panel's view, the purpose of post-trial motions would be "improperly subverted" if they were excused here. The panel noted that such motions "give[ ] the trial court an opportunity to correct errors in its ruling, and avert[ ] the need for appellate review." The panel then continued, stating:

Pertinent to the matter currently before us wherein Appellants have asked this Court to modify or change an allegedly erroneous damage award, Rule 227.1 gives that very power to the trial court. Pa.R.C.P. 227.1(a)(4); *Diamond Reo Truck Co. v. Mid–Pacific Industries,* 806 A.2d 423, 429 (Pa.Super.2002).

The importance of filing post-trial motions cannot be overemphasized. "This is not a blind insistance [sic] on a mere technicality since post-trial motions serve an important function in adjudicatory process in that they afford the trial court in the first instance the opportunity to correct asserted trial court error and also clearly and narrowly frame issues for appellate review."

*Id.,* 806 A.2d at 428 (citation omitted).

Although there are instances where post-trial motions are prohibited, we have found no precedent to suggest that where a matter has been tried before the lower court but remanded on the issue of damages, post-trial motions are prohibited to the resulting damage award.

*Newman Devel. Grp. of Pottstown, LLC v. Genuardi's Family Market, Inc.,* 18 A.3d 1182, 1188 (Pa.Super.2011) (footnote omitted).

The panel found *Cerniga v. Mon Valley Speed Boat Club,* 862 A.2d 1272 (Pa.Super.2004), to be instructive because that case also involved a remand to the trial court, a party's failure to file post-trial motions from the order entered on remand,

and a Superior Court quashal of the ensuing appeal. Unlike the case *sub judice*, the Superior Court's remand order in *Cerniga* specifically required the trial court to make additional findings of fact. The panel nevertheless found *Cerniga* relevant because the initial panel here had directed the trial judge to apply a certain lease provision to arrive at the proper measure of damages. The trial judge applied that lease provision, and appellants claimed that he committed errors in his application. According to the panel, appellants' failure to file post-trial motions deprived the trial judge of the opportunity to correct any such errors. Thus, the panel rejected appellants' argument that the procedural circumstances rendered post-trial motions unnecessary and quashed appellants' appeal.

We granted review limited to a single issue:

Did the Superior Court err in quashing Genuardi's appeal for failure to file a post-trial motion, where the appeal was from the trial court's recalculation of damages in accordance with the Superior Court remand order and where no additional evidence was received?

This issue presents a pure question of law regarding the interpretation of Rule 227.1; therefore, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Janssen Pharmaceutica, Inc.*, 607 Pa. 406, 8 A.3d 267, 271 (2010); *Diehl v. W.C.A.B. (I.A. Const.)*, 607 Pa. 254, 5 A.3d 230, 243 (2010).

Appellants ask this Court to reverse the Superior Court's order quashing their appeal, arguing that a trial court's mere recalculation of damages pursuant to a directive from an appellate court without receiving any additional evidence is not a trial for purposes of Rule 227.1's requirement of post-trial motions. According to appellants, the Official Note to Rule 227.1(c) supports this argument because it makes clear that the seminal question is whether the proceeding at issue is a trial:

*Note:* A motion for post-trial relief may be filed following a trial by jury or a trial by a judge without a jury pursuant to

Rule 1038. A motion for posttrial relief may not be filed to orders disposing of preliminary objections, motions for judgment on the pleadings or for summary judgment, motions relating to discovery or other proceedings which do not constitute a trial. *See U.S. National Bank in Johnstown v. Johnson,* 506 Pa. 622, 487 A.2d 809 (1985).

Appellants stress the language in the final clause, "or other proceedings which do not constitute a trial," arguing that a trial court's recalculation of damages pursuant to an appellate court's mandate without receiving additional evidence is a proceeding that does not constitute a trial.

A trial, appellants claim, has certain "functional hallmarks" that are not present when a trial court merely recalculates damages, particularly the receipt of evidence and the resolution of factual disputes. Brief of Appellants at 13. They contend that, even though a "trial" is not defined in Rule 227.1, subsection (c) does set forth the triggering events for the termination of a trial and the necessity for filing a post-trial motion. In the case of the non jury trial here, the triggering event was the "notice of nonsuit or the filing of the decision in the case of a trial without jury." Further, appellants argue, the Rule notably does not permit post-trial motions to be filed following preliminary objections and motions for summary judgment, both instances where a trial court makes no factual findings but decides only questions of law. Thus, appellants conclude, the Rule maintains the functional definition of a trial as a fact-finding proceeding where a court receives evidence and "then determine[s] whether the facts actually occurred," citing *Commonwealth ex rel. Kerekes v. Maroney,* 423 Pa. 337, 223 A.2d 699, 704 n. 8 (1966) (in context of distinction between guilty plea and confession, "[t]he nature of the trial proceeding requires that consideration be given to evidence"), and *Corn Exchange Nat. Bank & Trust Co. v. Burkhart,* 401 Pa. 535, 165 A.2d 612, 617 (1960) ("The object of a trial is to ascertain the truth of the facts in issue.").

Appellants maintain that these definitions of a "trial," as envisioned in Rule 227.1, contemplate a proceeding where the court hears evidence and resolves the merits of factual dis-

putes and that Pennsylvania courts have consistently so held. Appellants cite the Superior Court's decision in *Lenhart v. Travelers Ins. Co.*, 408 Pa.Super. 1, 596 A.2d 162, 164 (1991), where, according to appellants, the panel reached a conclusion contrary to that of the panel here, holding that a decision by the trial court that was based solely on the record without the introduction of any new evidence is not a trial for purposes of Rule 227.1(c). Subsequent to *Lenhart,* appellants argue, the Superior Court has further articulated and applied *Lenhart's* logic. *See Vonada v. Long,* 852 A.2d 331, 337 (Pa.Super.2004) (post-trial motion prohibited because trial court decision based on record, briefs and stipulations of fact without introduction of evidence); *DiGregorio v. Keystone Health Plan East,* 840 A.2d 361, 365–66 (Pa.Super.2003) (post-trial motion not permitted where case was decided on briefs without submission of evidence); *Baughman v. State Farm Mut. Auto. Ins. Co.,* 441 Pa.Super. 83, 656 A.2d 931, 933 (1995) (post-trial motion prohibited where trial court's decision based solely on consideration of record without introduction of evidence).

Appellants contend that *Cerniga,* which the panel cited to support its quashal here, is consistent with this line of decisions because *Cerniga* quashed an appeal where the matter was remanded to the trial court for additional findings of fact, and the defendant appealed from the trial court's order making those findings of fact without first filing post-trial motions. And, appellants claim, the Superior and Commonwealth Courts have consistently held that where a remand involves additional fact finding, post-trial motions are required. *See Warfield v. Shermer,* 910 A.2d 734, 739 (Pa.Super.2006) (post-trial motions required where appellant presented testimony, exhibits and two deposition transcripts on remand); *Hysong v. Lewicki,* 931 A.2d 63, 65 (Pa.Cmwlth.2007) (post-trial motions required where on remand new evidence introduced and detailed findings of fact made based on new evidence).

Appellants also take issue with the Superior Court panel's analysis insofar as the panel relied upon the *Black's Law Dictionary's* definition of a trial as a "judicial examination and determination of issues between parties to an action."

BLACK'S LAW DICTIONARY 1504 (6th ed.1990). Appellants argue that this definition cannot possibly be the definition contemplated by Rule 227.1 because it is so broad that it would encompass proceedings expressly excluded from the requirement for the filing of posttrial motions set forth in the Rule and in the Official Note, including decisions on preliminary objections, summary judgment motions, and other non-evidentiary proceedings. Appellants claim that, to the extent the panel relied upon that definition to inform its decision, the panel erred.

Appellants further challenge the panel's policy statement that "the purpose posttrial motions serve would be improperly subverted were we to excuse their filing here. It is undisputed that the filing of such motions gives the trial court an opportunity to correct errors in its rulings, and averts the need for appellate review." *Newman Devel. Grp.*, 18 A.3d at 1188. Appellants assert that this policy statement is just as broad as the *Black's Law Dictionary* definition of trial and would swallow the actual Rule because if post-trial motions were required merely to allow a trial court an opportunity to correct an error, a party would need to file them at the conclusion of every proceeding, as "any trial court decision—pre-trial, post-trial or otherwise—can always benefit from a second look." Brief of Appellants at 20. Yet, the Rule itself, as well as precedent from this Court and the intermediate appellate courts, appellants claim, has made it clear that the actual scope of Rule 227.1 is much narrower than what conceivably could be embraced by the policy behind it.

In addition, appellants argue, the remand proceeding in this case took place four years after the actual trial, at a time when the matter was at a completely different stage. The Superior Court remand was not a trial proceeding but rather a posttrial/post-judgment proceeding. Rule 227.1, appellants claim, makes a clear distinction between trials and other stages of a case. In fact, appellants point out, this Court promulgated the present version of the Rule in 1989 to clarify confusion regarding whether the Rule applied to pre-trial rulings such as preliminary objections. The Court amended the Rule by add-

ing an Official Note specifically exempting pre-trial orders because, simply put, "[p]re-trial orders do not need **post**-trial motions." *Id.* at 21. Appellants acknowledge that the revised Rule does not discuss post-trial proceedings, but they argue that post-trial proceedings, like pre-trial matters, are not trials. Appellants read the absence of the explicit inclusion of post-trial proceedings in Rule 227.1 to mean that post-trial motions are not required from decisions not even rendered until post-trial proceedings themselves have commenced.

Finally, appellants argue that the panel's interpretation and waiver holding represents a sea change in the application of Rule 227.1 and, as such, any requirement that post-trial motions be filed in this scenario should apply prospectively only. They claim that determinations of waiver based upon procedural defaults should be reserved for cases where default under existing rules is clear, which is not the case here. Appellants state that Rule 227.1 on its face neither requires nor allows the filing of posttrial motions in this instance, and, if their interpretation is deemed incorrect, then the Rule as written is far from clear. Thus, any decision in this case holding that issues are subject to waiver for failure to file post-trial motions in a remand scenario like this one should not apply to these appellants, but should only apply prospectively to cases where litigants are fairly warned of this requirement and its severe consequence.

Newman responds by urging this Court to affirm the Superior Court's quashal order, arguing that we have held that, to preserve an issue for appeal, a party must file post-trial motions. *See L.B. Foster Co. v. Lane Enterprises, Inc.*, 551 Pa. 307, 710 A.2d 55 (1998). Newman echoes the panel's focus on the purpose of Rule 227.1 in affording trial courts an opportunity to reconsider and correct errors and thus to avoid appellate review. Citing *Cerniga*, Newman argues that there is no exception to the requirement of filing post-trial motions simply because a matter is before the trial court on a remand. Regarding the specific procedural posture of this case, Newman notes that the trial court issued its remand/damages decision on February 25, 2010, and that decision occurred

after a trial, was the product of the trial, and was rendered at a point when all prior decisions had been vacated. Thus, Newman argues, Rule 227.1(c)(2) required appellants to file post-trial motions. Newman acknowledges that Rule 227.1 provides exceptions to the post-trial motion requirement but maintains that remand proceedings are not among the limited exceptions.

Regarding appellants' argument that this remand proceeding falls within the Official Note's language exempting "other proceedings which do not constitute a trial," Newman invokes Pa.R.C.P. 129(e), which states that: "A note to a rule or an explanatory comment is not a part of the rule but may be used in construing the rule." Newman posits that the "other proceedings" referred to in the Note do not encompass substantive factual determinations and legal conclusions reached on remand. Thus, Newman concludes that appellants were required to file post-trial motions, failed to do so, and thereby waived their issues on appeal.

Newman further characterizes *Cerniga* as on point procedurally, to support the argument that post-trial motions are required to preserve issues arising from remand proceedings. Newman disputes appellants' account of *Cerniga*, countering that the procedural history of that case establishes that: (1) the trial court issued its initial decision following a trial; (2) the defendant filed timely post-trial motions; (3) the trial court denied the post-trial motions, and the defendant appealed; (4) the Superior Court vacated the trial court's decision and remanded for proceedings consistent with its opinion; (5) the trial court in fact did not take any new testimony or evidence but, consistent with the panel's directive, made new factual findings and conclusions of law based upon the existing record; (6) the trial court made the same substantive determination based upon the new findings; (7) the defendant failed to file post-trial motions; and (8) on the plaintiffs' motion, the panel quashed the defendant's ensuing appeal due to the failure to file post-trial motions. Newman says that appellants mischaracterize *Cerniga* because the panel there did not remand for a trial or a factual hearing, but rather remanded

only for proceedings consistent with the opinion. According to Newman, it is clear from the *Cerniga* trial court's opinion on remand that it based its decision on the initial trial record. Thus, Newman concludes, *Cerniga* establishes that, in determining whether post-trial motions are required in remand scenarios, the question is not whether new facts and testimony are heard, but whether the trial court makes new factual determinations and conclusions of law—post-trial motions are required on remand regardless of whether new evidence is implicated.

Further, Newman claims that appellants' reliance on *Lenhart* is misplaced because *Lenhart* did not involve a trial, but rather what the Superior Court characterized as cross-motions for summary judgment. *Lenhart*, according to Newman, merely determined that post-trial motions were not required because Rule 227.1 specifically exempts summary judgment orders. Newman argues that the panel here considered and distinguished *Lenhart* because post-trial motion practice does not apply to pre-trial matters.

Finally, Newman challenges appellants' argument that, if the Superior Court was correct in finding that Rule 227.1 was intended to require post-trial motions in this scenario, that interpretation should only apply prospectively. Newman argues that the language of Rule 227.1 is clear, and, since the *Cerniga* decision, its applicability to determinations on remand has been apparent. According to Newman, *Cerniga* alerted the legal community to the requirement that post-trial motions must be filed following remand proceedings with the result that the only prudent course for practitioners is to file post-trial motions from all decisions on remand.

In addition to the parties' briefs, we have the benefit of three briefs filed by *amici curiae*, notably all in support of appellants: (1) the Pennsylvania Association for Justice ("PAJ"); (2) the Pennsylvania Bar Association, the Philadelphia Bar Association and the Allegheny County Bar Association ("Bar Associations"); and (3) Phyllis W. Beck, Charles L. Becker, Charles W. Craven, Kandice J. Giurintano, Robert A. Graci, John J. Hare, Justin M. Johnson, John P. Krill, Jr.,

Maureen Lally–Green, Brian T. Must, James C. Sargent, Sean R. Sullivan and Kim M. Watterson ("Jurists and Litigators").[4]

PAJ claims that appellants preserved their issues on appeal under the existing case law, citing *Lenhart*. PAJ posits that it is *Lenhart* and not *Cerniga* that applies in this instance because in *Lenhart* the remand court heard no new evidence and considered only the evidence of record while the *Cerniga* court engaged in additional fact-finding as per the direction of the Superior Court. Because the trial court here received no new evidence on remand, PAJ argues, *Lenhart* controls and appellants were not required to file post-trial motions. In addition, PAJ contends that, if it is determined that a second post-trial motion was required, such a holding should apply only prospectively because waiver is a harsh sanction and diligent counsel could fairly have viewed *Lenhart* as the controlling prior law.

The Bar Associations argue that waiver as a result of procedural defaults should be reserved for the clearest of cases; here, however, they say the panel's waiver finding was grounded upon a new interpretation of a procedural rule. The Bar Associations claim that there is nothing in the text of Rule 227.1 that requires the filing of post-trial motions in this factual situation where there was a trial, post-trial motions were filed, and on appeal the Superior Court remanded to the trial court to make a specific determination, and not for a new trial. The Bar Associations also stress that the trial court made its specific determination without taking any additional evidence or conducting a proceeding that in any way resembled a trial. The Bar Associations conclude that Rule 227.1, by its terms, did not require appellants to file post-trial motions, nor is there any case law on point that would have provided fair warning to counsel that such a motion was required. The Bar Associations urge that waiver of the right

4. The Honorable Phyllis W. Beck, the Honorable Justin M. Johnson, the Honorable Maureen Lally–Green, and the Honorable Robert A. Graci are former Superior Court judges. Charles L. Becker, Charles W. Craven, Kandice J. Giurintano, John J. Hare, John P. Krill, Jr., Brian T. Must, James C. Sargent, Sean R. Sullivan and Kim M. Watterson are all experienced appellate litigators.

to appeal should occur only where the rule establishing waiver was clear at the time of the conduct in question.

The Jurists and Litigators introduce their argument with a strong policy statement regarding the finding of waiver generally:

> Appellate waiver is not an end in itself. Whether arising in relation to evidentiary decisions, failure to file a proper statement of matters complained of on appeal under Pa. R.A.P. 1925, failure to file a post-trial motion when one is necessary under Pa.R.C.P. 227.1 or any of the other potential bases for it, waiver exists to bring about compliance with rules necessary to the proper and efficient operation of the courts. To serve that function, of course, waiver must be employed in situations in which counsel and litigants know or should know that a particular rule applies and that waiver will be the consequence of a failure to do as the rule requires. When a court finds waiver in a novel situation in which reasonable counsel would not have known of the requirement that gave rise to the waiver, the salutary purposes of waiver are not served at all. In such a circumstance, there is no benefit to the judicial process, only a trap that denies merits review to those who, despite diligence, make a choice an appellate court later decides was wrong. This is, unfortunately, such a case.

*Amicus* Brief of Jurists and Litigators at 6. The Jurists and Litigators further argue that Rule 227.1, by its terms, did not require the filing of post-trial motions in this matter because the remand proceeding was not a trial but merely was a proceeding that resulted in a trial court order based solely on an existing record, citing *Lenhart.* Because *Lenhart* was the extant law on the filing of post-trial motions where a trial court on remand takes no new evidence, they contend that "a litigant and its counsel, reviewing the legal landscape immediately after the trial judge rendered his decision on the remand issues in this case, reasonably could (and should) have concluded that Rule 227.1 did not require or even permit a post-trial motion." *Id.* at 9. And, "[p]ut another way, the text of the rule, the official note and the cases interpreting them would

not have given [appellants] or any other litigant in the same position unambiguous notice that a post-trial motion was required lest appellate issues be waived." *Id.* at 10. The Jurists and Litigators further urge that, should this Court determine that post-trial motions were required in this instance, the interpretation should be applied prospectively only because "[o]therwise, the salutary reason for waiver—providing the strongest incentive for litigants and their counsel to comply with the rules—gives way to a mechanical and potentially arbitrary process by which unwitting litigants lose their chance for substantive review." *Id.* at 13.

The Jurists and Litigators also caution that the panel's waiver holding in this case, if approved, could unleash a flood of unnecessary post-trial motions in the trial courts and protective appeals in the intermediate appellate courts so that prudent counsel can be assured that clients are adequately protected through prophylactic, and likely unnecessary, filings. The very real risk to counsel of filing unnecessary post-trial motions is that, while waiting for the trial court to rule on the motions, the possibility exists that the Superior Court would find an appeal untimely if it deems the post-trial motions to be unnecessary or improper.

Finally, the Jurists and Litigators contend that the panel's waiver holding, which they view as a retroactive application of a new rule, has significant due process implications. They cite the U.S. Supreme Court's decision in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), setting forth the factors to be considered when determining whether to limit a rule to prospective application:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied non retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, *see e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp.* [392 U.S. 481, 496, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968) ], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, *see, e.g., Allen v. State Board of Elections*

[393 U.S. 544, 572, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) ]. Second, it has been stressed that "we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker* [381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) ]. Finally, we have weighed the inequity imposed by retroactive application, for "(w)here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma* [395 U.S. 701, 706, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) ]. The Jurists and Litigators submit that the panel's decision meets none of the *Chevron* factors: *i.e.,* (1) the waiver finding was not clearly foreshadowed by the text of Rule 227.1 or the cases interpreting it; (2) retroactive application of the panel's interpretation of the Rule would not further the holding's application or implementation; and (3) there is considerable inequity in applying the interpretation to this case. Thus, they argue, if upheld, the panel's construction of Rule 227.1 must be applied only prospectively.

The issue is a narrow but important one. There is one rule at issue, Rule 227.1, and two pertinent Superior Court decisions, *Lenhart* and *Cerniga,* and we are asked to determine how the Rule and precedent apply where an appellant files post-trial motions after the trial court's original verdict, but not to a later order resulting from a remand proceeding where no new evidence was taken. The matter has been more than ably briefed on both sides, and the Court's deliberations have been advanced by the helpful *amicus* presentations.

Preliminarily, we note that this Court has not passed upon the applicability of Rule 227.1(c) in the remand scenario, and we of course are not bound by the interpretations of the lower courts, although we obviously are receptive to their reasoned decisions. Rule 126 of the Pennsylvania Rules of Civil Procedure stresses an overriding concern that "The Rules shall be liberally construed to secure the just, speedy and inexpensive

determination of every action or proceeding to which they are applicable." The ensuing rules of construction then track many of the provisions found in the Statutory Construction Act, including a rule establishing the primacy of ascertaining and effectuating the intent of the entity adopting the Rule, which was this Court, as promulgator of the Rules of Civil Procedure. Pa.R.C.P. 127(a). In addition, as we have recently noted, "we have a strong interest in the preservation of consistency and predictability in the operation of our appellate process," *Samuel–Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 34 A.3d 1, 49 (2011), and issue preservation rules play an important role in that process. Also, as pertinent to one of the arguments forwarded here, Rule 129(e) provides that: "A note to a rule or an explanatory comment is not a part of the rule but may be used in construing the rule." Finally, we recognize that our interpretation of the Rules cannot occur in a vacuum; in instances where this Court has not spoken in our decisional law, the bench and bar properly must apprise themselves of the decisional interpretations of the lower courts and act accordingly.

We start with the relevant, plain terms of Rule 227.1, which is entitled "Post–Trial Relief." Rule 227.1(a) authorizes the trial court to act upon post-trial motions, and subsection (b) establishes the waiver consequence of a failure to preserve the issue either before or at trial (*see* Rule 227.1(b)(1)), or in post-trial motions (*see* Rule 227.1(b)(2)). Rule 227.1(b)(2) specifically provides that post-trial relief may not be granted unless the "grounds therefor ... are specified in the motion.... Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds." [5] Subsection (c), the provision in dispute here, then addresses the triggering mechanism and timing of post-trial motions, stating in pertinent part that posttrial motions "shall be filed

5. Civil Rule 227.1 addresses waiver at the trial court level, as a matter of the trial court's post-trial power. Appellate Rule 302, entitled "Requisites for Reviewable Issue," enforces the waiver consequence as an appellate matter, establishing the general rule that "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

within ten days after . . . . the filing of the decision in the case of a trial without a jury." Immediately after subsection (c) is the Note emphasized by appellants and their *amici*, which reiterates that a post-trial motion may be filed following a jury trial or a bench trial, but then reinforces the trial focus, as it states that "A motion for post-trial relief may not be filed to orders disposing of preliminary objections, motions for judgment on the pleadings or for summary judgment, motions relating to discovery or other proceedings which do not constitute a trial."

There is no dispute that, to secure post-trial or appellate relief, post-trial motions must be filed from the trial court's decision or verdict at the conclusion of a non jury trial, and indeed, both parties recognized that fact and filed post-trial motions after the bench trial verdict in this case in 2006. Notably, however, by its plain terms, the Rule simply does not purport to speak to an appellate remand proceeding. Indeed, the Rule is found square in the middle of rules governing civil trial practice.

Obviously, if an appellate court remands for a new trial, the civil trial rules apply again, and in full force. But, the circumstance here—not an uncommon scenario—involves a gray area, where there are to be further proceedings below, but the proceedings do not amount to a new trial. Remands may encompass a variety of proceedings: remand for a new trial, in whole or in part, remand for a ministerial act such as entry of judgment, remand for opinion or explanation, remand for an evidentiary hearing, remand to apply the ruling of the appellate court to settled facts, *etc.* Many remand proceedings may include submission of additional evidence, or resolution of disputed factual positions, a variety of iterations that would fall short of a full-blown trial. Thus, remands may encompass purely factual disputes, purely legal questions, mixed questions, or some measure of all questions. Our Rule as written does not purport to account for the variety of these remand proceedings. Rather, it speaks to "trials," in the midst of a series of rules governing civil trial practice. And,

as appellants emphasize, the Note to the Rule is consistent with its plain terms and confirms the trial focus.

■ The Civil Rules do not define the word "trial" nor do they address what proceedings—if any—short of a full-blown jury or bench trial should be deemed to constitute a trial for purposes of the post-trial motion requirement and consequent peril of waiver.[6] The question before us, therefore, is whether the remand proceeding before the trial court in this case plainly constituted a "trial" for purposes of the application of Rule 227.1. We think not.

■ To warrant the heavy consequence of waiver, in a rules schemata designed to "secure the just, speedy and inexpensive determination" of disputes, the applicability of the Rule should be apparent upon its face or, failing that, in clear decisional law construing the Rule. The case *sub judice* proceeded to a non jury trial and the court rendered a decision; both sides filed post-trial motions, and the trial court granted appellee's motion and increased the amount of the damage award; thereafter, the parties filed cross-appeals to the Superior Court. That court affirmed the trial court's determination on liability, *i.e.*, that appellants had breached their lease with Newman, but found that the trial court had not properly calculated damages because it failed to enforce the lease agreement's measure of damages provision. The panel remanded to the trial court with a general directive to conduct further proceedings "consistent with" its memorandum decision, without any specific directive or indication concerning the type or scope of proceeding that would occur upon remand. However, the command ordering a decision below consistent with the panel's opinion obliged the trial court to employ the formula the panel noted had been set forth in the lease to calculate damages:

> When applied to an abandonment of the lease by [appellants], section 20.2.2 measured (1) Newman's expectation interest in the contract as the total rent owed over the term of the entire lease, (2) the loss caused by the difference

6. Civil Rule 1038 addresses non jury trials and provides that they are the equivalent of jury trials in terms of the rights and privileges of the litigants.

between the rent promised by [appellants] and the rent ultimately received from the substitute tenants, and (3) the costs attendant to the effort to secure substitute tenants.

Super. Ct. Op. of 4/25/2008 at 17.

The trial court read the Superior Court's remand as a directive to recalculate damages based upon the existing record and the undisputed terms of the lease:

Counsel for [Newman] correctly argues that there is no need nor is it appropriate to take additional evidence in this matter. The trial has ended and the directives of the Superior Court require that the trial court compute damages of record consistent with its opinion.

Tr. Ct. Op. of 1/15/2010 at 1. It is clear from this language that the trial court did not view its activities on remand as a trial: "the trial has ended." Upon filing of the second appeal, however, the Superior Court panel took a different view and quashed appellants' appeal for failure to file post-trial motions from the recalculation of damages. 18 A.3d at 1187.

In our view, the plain language of Rule 227.1 does not address this circumstance, much less does it make clear that post-trial motions are required. Moreover, the existing Superior Court decisional law interpreting Rule 227.1—laying aside the question of whether those cases have correctly interpreted the Rule—did not make clear that, notwithstanding the silence of the Rule concerning a non-retrial remand scenario, the Rule was construed as requiring post-trial motions in cases where a new determination of some kind was made upon remand. In short, the panel's decision to quash the appeal is at odds with the reasonable expectations of practicing attorneys who would read the rule and attempt to discern the scope of the post-trial motion requirement.

There is no dispute here concerning the salutary purposes served by rules requiring issue preservation and the reasoning why waiver is an appropriate consequence for non-compliance. If our task were to implement the broad purpose of seeking reconsideration by the trial court, as that purpose is ably argued by appellees—*i.e.,* to provide the trial court with an

opportunity to reconsider and correct errors, and thereby to reduce the number, burden and costs of appeals [7]—we might agree that post-trial motions should be pursued whenever a trial court rules upon an issue remanded to it; or we could adopt a more limited rule requiring post-trial motions any time fact-finding was involved, on grounds that resolution of factual disputes, however narrow or discrete, is sufficiently like a trial to trigger the underlying rationale. But, our task is not to implement a principle animating a Rule, via a waiver holding; rather, the task is to determine whether the language in our Rule, or governing decisional law, fairly conveys that such a requirement already exists, such that noncompliance requires a waiver finding. And, the language of this Rule is simply not coterminous with the underlying principle. The Rule speaks only to the post-trial scenario, and not to all instances where reconsideration by the trial court might be salutary; by its terms, it puts no party or counsel on notice respecting a post-trial requirement when, upon an appellate remand, the trial court conducts a proceeding that is less than a new "trial."

Given that the broader purpose of the Rule is both easy to identify and is salutary, it is not surprising that parties and courts have focused on the nature of the remand proceeding to determine if the remand encompassed a factual dispute, or whether new evidence was taken—*i.e.*, whether the proceeding was "trial-like" in some respect. But, there can be value in asking a court to reconsider a purely legal determination as well. Moreover, there are many disputes, including disputes requiring resolution of factual elements, that fall far short of a "trial." Certainly, this Court could adopt a Rule requiring a new motion whenever a trial court renders a new decision, whether upon remand or not; but Rule 227.1 does not, by its terms, establish that requirement, nor again, does it specifically address remands.

7. *See Chalkey v. Roush*, 569 Pa. 462, 805 A.2d 491, 494 n. 9 (2002) (purpose of Rule 227.1 "is to provide the trial court with an opportunity to correct errors in its ruling and avert the need for appellate review.").

Keeping our Rules structure in mind, we next examine the existing case law interpreting Rule 227.1 to determine whether it provided sufficient predictability to practicing attorneys regarding when post-trial motions must be filed, such that a colorable argument can be made that more could be required of litigants in remand scenarios than the plain language of the Rule demands.

In 1991, in *Lenhart v. Travelers Ins. Co.*, 408 Pa.Super. 1, 596 A.2d 162, the Superior Court first spoke to this issue. There, the plaintiff was injured in a collision with a car while a passenger on a Trailways bus. The identity of the driver of the car that caused the accident was never discovered, and neither the plaintiff nor any member of her household owned an automobile. Thus, she had no insurer of her own from whom she could seek uninsured coverage for her injuries. The defendant, Travelers Insurance Company, was assigned as Trailways' insurer under the Assigned Risk Plan when Trailways entered into bankruptcy. The plaintiff ultimately sued Travelers after it denied her claim. The matter proceeded to arbitration, resulting in an award to plaintiff of $15,000. Travelers appealed to the Common Pleas Court, where the parties agreed to submit the matter on briefs and the record, which included documents, exhibits and transcripts of the arbitration proceedings. The trial court found in favor of Travelers.

On the plaintiff's appeal to the Superior Court, Travelers argued that the plaintiff waived her claims because she failed to file post-trial motions. The panel rejected the waiver argument, finding that no proceeding had occurred that would trigger the civil post-trial motion requirement:

We [ ] reject appellee's suggestion that appellant's failure to file post-trial motions to the order finding in favor of appellee results in waiver of the issues under Pa.R.C.P. 227.1(b). . . . [T]he trial court's decision was made by considering the record, consisting of the arbitration transcript and various exhibits, and briefs filed by the parties. No evidence or findings of fact were introduced or presented. The note to Pa.R.C.P. 227.1(c) provides in pertinent part, "A

> motion for post-trial relief may not be filed to orders disposing of preliminary objections, *motions* for judgment on the pleadings or *for summary judgment,* motions relating to discovery or *other proceedings which do not constitute a trial."* (Emphasis added). Since the decision by the trial court was based solely on its consideration of the record, without the introduction of any evidence, it clearly is an order either disposing of what in effect were cross-motions for summary judgment or at the very least, an order entered in a proceeding that did not constitute a trial. Consequently, post-trial motions actually were prohibited under Pa.R.C.P. 227.1.

*Lenhart,* 596 A.2d at 164 (emphasis by *Lenhart* court). Thus, the panel held that a proceeding that does not involve the taking of evidence is not a trial, thereby negating the need for post-trial motions under Rule 227.1.

In 2004, in *Cerniga v. Mon Valley Speed Boat Club,* 862 A.2d 1272, the Superior Court again considered the necessity of post-trial motions, this time in the context of a remand proceeding. The appellant Boat Club filed post-trial motions following the trial court's entry of its original order finding that the appellees had obtained rights to a piece of property through adverse possession. The Superior Court vacated that order on direct appeal and remanded to the trial court. The trial court on remand made additional factual findings and conclusions of law and issued another order, again adverse to the Boat Club. The Boat Club did not file a second set of post-trial motions, but instead appealed to the Superior Court. The appellees filed a motion to quash, and the Superior Court asked for a response from the appellant regarding whether the failure to file post-trial motions resulted in waiver. Notably, unlike appellants in the case *sub judice,* the appellant Boat Club did not argue that Rule 227.1 did not apply to remand determinations. Instead, the appellant argued that it was not obliged to file post-trial motions because the Appellate Rule 1925 process was sufficient to preserve its issues, which were the same issues raised in the prior appeal.

The *Cerniga* panel granted the motion to quash. The panel noted that several of the appellant's issues had involved additional findings of fact and conclusions of law arising on the remand, and held that the appellant had waived its appeal issues by failing to file post-trial motions:

> [O]n direct appeal, this Court vacated the trial court's order and remanded the case to the trial court with instructions that the court make additional findings of fact and conclusions of law, and the trial court did indeed make additional factual findings and legal conclusions on remand. By failing to file post-trial motions to the trial court's new order, which was based on these new factual findings and conclusions of law, Boat Club frustrated the purpose of Rule 227.1 and deprived the trial court of an opportunity to correct any errors in its new ruling, albeit one that was consistent with its prior ruling. Indeed, some of the issues which Boat Club now raises on appeal specifically involve the additional factual findings and legal conclusions entered by the trial court on remand. Accordingly, we conclude that Boat Club was required under Rule 227.1 to file post-trial motions to the trial court's May 2, 2003 order, and that by failing to do so, Boat Club has failed to preserve any issues for appellate review. We therefore grant Appellees' motion and quash the instant appeal.

*Id.* at 1274–75.[8]

As we have noted earlier, we understand why the *Cerniga* panel looked to the trial-court-reconsideration-to-forestall-appeals purpose of Rule 227.1 in determining whether post-trial motions would have been helpful in a circumstance where the remand proceeding appeared to involve additional factual determinations. Moreover, although the court in *Cerniga* was careful to ask for a reply before ruling on the motion to quash, it was not presented with the argument this Court has had presented to it here: *i.e.*, that Rule 227.1 does not, by its

**8.** We realize that the parties dispute the proper interpretation of *Cerniga*. We have quoted the opinion because, in determining the basis and scope of *Cerniga*, we accept the facts as set forth and understood by the panel rendering that decision.

terms, clearly speak to remands short of a retrial. Indeed, the actual waiver dispute in *Cerniga* did not so much involve the proper scope of Civil Rule 227.1 as it did the question of whether Appellate Rule 1925 can compensate for a Rule 227.1 lapse.

Looking to *Lenhart* and *Cerniga*, not for guidance as to the actual scope of Rule 227.1 as conveyed by its language, but rather for what those decisions reasonably conveyed to practicing attorneys regarding what triggers the post-trial motion requirement of the Rule in remand scenarios, we believe that the waiver holding below cannot stand. *Cerniga* stressed that the remand produced "new" and "additional" factual findings and conclusions of law. A party or attorney reading *Lenhart* and *Cerniga* could reasonably conclude that a remand proceeding before the trial court that does not involve taking new evidence or resolving a new factual dispute is not a trial within the meaning of Rule 227.1, and does not require the filing of new post-trial motions. Such a reading is buttressed by the Official Note's advice that post-trial motions are not required in response to "other proceedings which do not constitute a trial." And, even if this were not the best reading of the Superior Court decisional law, the fact remains that the argument forwarded here concerning the proper scope of Rule 227.1 is an argument that was not forwarded in *Cerniga*, and that is enough to take this case out of that decisional rule.

 In short, we harbor no doubt that, under the Superior Court's own decisional law, this was not an appropriate case to find that Rule 227.1 required the filing of post-trial motions. But, having said that, we stress that our task encompasses more than merely interpreting and aligning the decisional law of the lower courts concerning our Civil Rules. Our primary holding remains that, notwithstanding the interpretation of the Superior Court which was powered by its accurate estimation of the Rule's overriding purpose, the proper interpretation of the Rule is that it does not purport to address the remand scenario, and thus a party cannot be faulted—upon pain of waiver—for failing to file post-trial motions to a proceeding upon remand which amounts to less than an actual trial. A

remand proceeding such as the one here, that relies on an existing record, is not a trial—even if the trial court draws different conclusions from that record to comport with an appellate court's directive. Thus, the remand proceeding in this instance, where the trial judge merely reached a different damage calculation based upon facts and contract terms already in the record, was not a "trial," and Rule 227.1 does not apply.

Our holding interprets this Court's Rule as it is written. This case has revealed, however, that there are circumstances and nuances, involving appellate remands, that the current Rule does not account for. Accordingly, we will refer this issue to the Civil Procedural Rules Committee for an examination and recommendation of whether, in the Committee's view, revisions should be made to the Civil Rules.

The decision of the Superior Court is vacated, and this matter is remanded to that court for consideration of the merits of appellants' appeal.

Justice ORIE MELVIN did not participate in the decision of this case.

Justices SAYLOR, EAKIN, BAER, TODD and McCAFFERY join the opinion.