**[J-59A-2022 and J-59B-2022] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| THE BERT COMPANY D/B/A NORTHWEST INSURANCE SERVICES | : | No. 13 WAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered May 5, 2021, |
| v. | : | at No. 817 WDA 2019, affirming the |
| | : | Judgment of the Court of Common |
| | : | Pleas of Warren/Forest County |
| MATTHEW TURK, WILLIAM COLLINS, | : | entered June 3, 2019, at No. AD 260 |
| JAMIE HEYNES, DAVID MCDONNELL, | : | of 2017 |
| FIRST NATIONAL INSURANCE AGENCY, | : | |
| LLC, FIRST NATIONAL BANK, AND FNB | : | ARGUED: October 25, 2022 |
| CORPORATION | : | |
| | : | |
| | : | |
| APPEAL OF: MATTHEW TURK, FIRST | : | |
| NATIONAL INSURANCE AGENCY, LLC, | : | |
| FIRST NATIONAL BANK, AND FNB | : | |
| CORPORATION | : | |
| | : | |
| THE BERT COMPANY D/B/A NORTHWEST INSURANCE SERVICES | : | No. 14 WAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered May 5, 2021, |
| v. | : | at No. 975 WDA 2019, dismissing as |
| | : | moot the cross-appeal from the |
| | : | Judgment of the Court of Common |
| MATTHEW TURK, WILLIAM COLLINS, | : | Pleas of Warren/Forest County |
| JAMIE HEYNES, DAVID MCDONNELL, | : | entered June 3, 2019, at No. AD 260 |
| FIRST NATIONAL INSURANCE AGENCY, | : | of 2017 |
| LLC, FIRST NATIONAL BANK, AND FNB | : | |
| CORPORATION | : | ARGUED: October 25, 2022 |
| | : | |
| | : | |
| MATTHEW TURK | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |

| | |
|---|---|
| THE BERT COMPANY, NORTHWEST BANK, AND NORTHWEST BANCSHARES, INC. | : |
| | : |
| | : |
| | : |
| | : |
| APPEAL OF: MATTHEW TURK, FIRST NATIONAL INSURANCE AGENCY, LLC, FIRST NATIONAL BANK, AND FNB CORPORATION | : |
| | : |
| | : |
| | : |
| | : |

**CONCURRING OPINION**

**JUSTICE BROBSON**                                        **DECIDED: JULY 19, 2023**

I concur in the result of the Majority because I believe the facts of this case demonstrate that the per-defendant approach to assessing the ratio discussed in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), is permissible. I disagree, however, with the Majority's suggestion that the Defendants (FNIA, FNB Corp., FNB, and Turk) may have avoided the per-defendant approach as applied here by having the jury "allocate responsibility for the harm [among the Defendants]." Majority Op. at 43-44. The Majority posits that the Defendants' "trial strategy" to agree with Northwest that the jury charge and verdict slip would instruct the jury to enter a single compensatory damages award now prevents this Court from ascertaining a more accurate "comparison of the Defendants' responsibility for the harm to the reprehensibility of the Defendants' conduct." *Id.* at 7 n.10, 36, 43-44. For several reasons, I disagree with this position.

First, there may be valid reasons for declining to request that a jury allocate harm among multiple defendants, particularly where all defendants are contesting liability. For example, trial counsel may be wary of suggesting to a jury that his client is less liable than another party while simultaneously claiming that his client has no liability at all. Allocating

harm may also confuse the jury, and, as explained in more detail below, there may be circumstances where harm is indivisible.

Second, as the parties represent in their briefs, they "agreed" to enter a single, lump-sum award because joint and several liability applied and the injury to Northwest was *indivisible*. (*See* Defendants' Br. at 11-12 ("While the jury awarded separate compensatory damage amounts for each count, per agreement, only the highest compensatory damage number is recoverable since joint and several liability applied.")); (Northwest Br. at 33-34 ("The jury note reflected that it was uncontroverted that [Northwest] sustained a single, indivisible injury . . . [that] was incapable of being divided into separate and distinct parts.").) The trial court similarly noted that Northwest could not recover multiple times for the same injury under the law and that the joint and several nature of the injury required that the jury enter a single compensatory damages award. (*See* Reproduced Record at 496a-97a (instructing jury that "each Defendant that is liable on these causes of action is jointly and severally liable for the damages, which means that [Northwest] can attempt to recover the amount . . . awarded against any of the liable Defendants. If you award damages on multiple causes of action, [Northwest] will only be able to recover the amount of the highest damage award.").) Thus, the parties and the trial court were clearly operating under the belief that the law permitted only a single, lump-sum compensatory damages award. The Majority correctly recognizes that a jury can allocate a joint and several compensatory award among multiple defendants, but, based on the representations of the parties and the trial court and in review of the claims and injury to Northwest, it is not clear to me that this case involved an injury that is divisible.

Consequently, in my view, this Court is faced with: (1) an indivisible compensatory award; (2) individualized punitive damages awards based on the reprehensibility of each

of the Defendants' conduct; (3) joint and several liability among the Defendants; and (4) the inability to group the Defendants together and treat them as a single actor. Under these circumstances, I agree with the outcome reached by the Majority that calculating the *Gore* ratio by utilizing the $250,000 compensatory damages award for the First National Defendants and the $164,943[1] compensatory damages award for Turk as the denominator and utilizing each Defendants' individual punitive damages award in the numerator—*i.e.*, the per-defendant approach—is permissible. Further, this factual scenario makes clear that this is not a circumstance where trial strategy could have impacted the constitutionality of the punitive damages awards.

Assuming *arguendo* that the actual harm to Northwest could be allocated among the Defendants, a remand to the trial court for such an allocation and a review of the constitutionality of the punitive damages awards would be appropriate given that this involves an issue of first impression. As such, the parties and their counsel clearly had no knowledge that failing to allocate the compensatory damages award could potentially lead to an unfavorable punitive-to-compensatory ratio. In other words, I would not fault the parties for failing to take measures of which they were unaware in order to preserve a means of demonstrating that the individual punitive damages awards at issue are excessive. *Cf. Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Markets, Inc.*, 52 A.3d 1233, 1247-48 (Pa. 2012) (suggesting that "the heavy consequence of waiver" should only be applied where a rule is both "clear" and consistent with "the reasonable expectations of practicing attorneys"). This is particularly so where this matter involves an exceptionally malleable area of law.

Going forward, should a compensatory damages award lend itself to allocation at trial in a situation where punitive damages may also be awarded, it may be beneficial for

---

[1] The highest amount that Turk was jointly and severally liable for was $164,943.

the trial court and the parties to determine at the outset whether such compensatory damages should be allocated by the fact-finder—be it a jury or a trial judge—or whether the matter should be bifurcated. If the matter is bifurcated, the fact-finder could allocate compensatory damages and assess punitive damages independent from questions of liability, thereby dispelling any jury confusion or problems arising from trial strategy mentioned above. If a party fails to take such action, it may find itself in a situation where the only available method of assessing the constitutionality of a punitive damages award is, like the present case, the per-defendant method where a joint and several, lump-sum compensatory award serves as a recurring denominator.

Finally, Justice Mundy notes in a concurring opinion that there may be circumstances not presently before the Court where the per-judgment approach is more appropriate than the per-defendant approach applied here. Justice Mundy notably highlights that the United States Supreme Court has "continuously refused to create mechanical rules in considering the constitutionality of the punitive-to-compensatory damages ratio." Concurring Op. at 5 (Mundy, J.). I agree. Given the complexity of this area of the law, I would likewise leave open the possibility that the per-judgment approach or some hybrid method could serve as the best means under different circumstances for assessing the constitutionality of a punitive award.

For the above reasons, I concur in the result.