IN THE COMMONWEALTH COURT OF PENNSYLVANIA

State Farm Fire and Casualty   :
Company A/S/O JC Investment, Inc.;  :
Restaurant Development, LLC,    :
               Appellants    :
                     :
          v.           :   No. 916 C.D. 2016
                     :   Argued: February 6, 2017
JPC Group, Inc.         :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT          FILED: March 9, 2017

      State Farm Fire and Casualty Company (State Farm) appeals a decision of the Court of Common Pleas of Philadelphia County (trial court) that denied State Farm's motion *in limine* to preclude JPC Group, Inc. from presenting evidence on its asserted qualified immunity defense. The trial court did so because it concluded that JPC Group was acting as an employee of the City of Philadelphia when it demolished a fire-damaged building and, thus, immune from tort liability. JPC Group counters that all of the issues State Farm raises in this appeal were waived due to its failure to file a post-trial motion. We reverse and remand for further proceedings.

## Background

      On December 24, 2012, a fire severely damaged a three-story building at 4912 Baltimore Avenue in the City of Philadelphia (City). To investigate the origin of the fire, the Fire Marshal decided that either the front or back of the building had to be removed. The inspectors from the City's Department of

Licensing and Inspection expressed concern that the demolition work created the risk of damage to the one-story buildings on either side of the damaged three-story building. JPC Group was selected to do the demolition work because it had previously performed such work for the City.

The City has an annual Master Demolition Contract (Contract) with JPC Group. The Contract authorizes JPC Group to submit demolition service bids to the City "in open competition with other contractors so qualified." Reproduced Record at 36a-37a (R.R. ___). The Contract provides "no guarantee that the contractor will be awarded bids against this Contract." R.R. 37a. To be eligible to participate, JPC Group is required to provide security in the form of a "performance bond" and "payment bond" as prescribed by the City. R.R. 38a. JPC Group is further required to carry its own liability insurance that names the City, its officers, and employees as additional insureds. In addition, the Contract requires JPC Group to indemnify the City for any costs, expenses, damages, and liabilities the City might incur as a consequence of JPC Group's performance of demolition services.

Richard Quigley, an inspector for the Department of Licensing and Inspection, testified in his deposition that the City chose JPC Group to demolish the fire-damaged building "because of the way the building was situated … a three story building above two one story buildings. So we wanted to bring on somebody who had the equipment and the manpower and the experience … to deal with the situation." R.R. 452a; Notes of Testimony, 10/24/2014, at 11-12 (N.T. __).

In preparation for the demolition process, JPC Group laid down tires and sheets of plywood on the roofs of the adjacent one-story buildings to protect them from falling bricks. The company then moved its excavator onto the scene to

perform the demolition work. The Fire Marshal, who was present at the scene, set up a "command post" at an adjacent property to watch the demolition.[1] During the process, the sidewalls of the building collapsed outward, causing damages to the adjacent one-story buildings, one of which was owned by Jason and Min Lee, JC Investment, Inc., and Restaurant Development, LLC (Owners).

State Farm, acting as Owners' subrogee, sued JPC Group for negligence. Owners also sued.[2] The trial court consolidated the two matters. JPC Group asserted in its answer with new matter, *inter alia*, that State Farm's claims were barred by the doctrine of qualified immunity. The parties deposed the City's Fire Marshal, inspectors, Chief of Contractual Services at the Department of Licensing and Inspection, as well as several employees of JPC Group. State Farm also prepared an expert report to show that JPC Group acted negligently in demolishing the fire-damaged building.

On July 7, 2015, State Farm filed a motion *in limine* with the trial court to preclude JPC Group from presenting evidence on its asserted defense of qualified immunity. On December 4, 2015, State Farm's counsel sent a letter to the presiding judge of the upcoming trial, suggesting that the trial court rule on the

---

[1] Fire Marshal Andrew Robinson testified in his deposition as to the reason he set up the command post: "We'd go in there and we'd talk about it…we say what we observed on the outer side, what we want to do next, what we want to have the crane operators do. And that was just someplace to get out of the cold … it was the warmest of the two properties." R.R. 133a; N.T., 10/24/2014, at 66. The Fire Marshal further testified: "[The] property gave us access to the area where we could see down into the property as the equipment operator was extracting the building beams, and stuff, out of there. From his property we could see down into it." R.R. 133a; N.T., 10/24/2014, at 67.

[2] Owners sued JPC Group to recover the monetary damages that are not covered by State Farm's insurance policy. As noted above, Owners' action was consolidated with State Farm's. Owners' appeal to this Court, also decided today, was separately docketed. *Lee v. JPC Group, Inc.,* (Pa. Cmwlth., No. 1000 C.D. 2016, filed March 9, 2017).

immunity issue before trial. Counsel stated that the immunity issue, which "features so prominently in JPC Group's defense," is "plainly a threshold question whose answer decides whether JPC can be held liable." State Farm's Reply Brief, Exhibit A at 1. Specifically, State Farm's counsel suggested the following procedure for the trial court to rule on the immunity issue: "counsel could submit short briefs on the [immunity] issue first thing Monday morning … the Court could consider these short briefs, and then hold oral argument. Then … counsel could either begin the trial with opening statements, or hear Your Honor announce her decision in favor of immunity (which would effectively end the trial)." State Farm's Reply Brief, Exhibit A at 2. After sending the above letter, State Farm filed a motion for summary judgment, which the trial court refused to consider as untimely.

On December 7, 2015, both parties appeared before the trial court and first addressed the status of the case. State Farm's counsel informed the court that there were a number of undecided motions *in limine*, some of which related to the immunity issue. The trial court acknowledged that immunity would be the "first and foremost" issue to be decided. R.R. 600a. JPC Group's counsel stated that his client had responded to the motion *in limine*, and that "the only question is whether [the judge] want[s] to decide [the immunity issue] on papers or whether [she] want[s] to hear testimony from the witnesses with regard to that issue." R.R. 601a. Assured by JPC Group's counsel that live testimony from the witnesses would not be different from the depositions, the trial court decided to rule on the immunity issue based on the depositions. The matter was continued until December 9, 2015.

On December 9, 2015, the parties reconvened and the trial court denied State Farm's motion *in limine*. The court found that JPC Group acted as an

employee of the City on the date of the incident and, thus, was immune from liability under what is commonly known as the Political Subdivision Tort Claims Act, 42 Pa. C.S. §§8541-8542 (Tort Claims Act).[3] State Farm appealed to the Superior Court, without first filing post-trial motions. The Superior Court ordered State Farm to show cause as to the basis for appellate jurisdiction. State Farm responded that it was not required to file post-trial motions because the trial court had not conducted a trial; rather, the court had issued a final order by ruling on State Farm's motion *in limine*. The Superior Court later transferred the case to this Court.

On appeal,[4] State Farm argues that the trial court erred in deciding that JPC Group acted as an employee of the City and is immune under Section 8541 of the Tort Claims Act, 42 Pa. C.S. §8541. State Farm contends that JPC Group acted as an independent contractor for the City. JPC Group responds that all of the issues that State Farm raises in its appeal were waived due to its failure to file post-trial motions. JPC Group also argues that, in any event, the trial court did not err in holding that it acted as an employee of the City and, thus, is immune from liability.

---

[3] Section 8541 of the Tort Claims Act provides: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. §8541. Section 8542 provides exceptions, *i.e.*, the circumstances where a local agency may be found liable for damages caused by its employee. 42 Pa. C.S. §8542. The trial court, in holding that JPC Group is immune from liability under Section 8541, did not consider the applicability of any of the exceptions in Section 8542.

[4] Whether a person acts as an independent contractor or an employee is a question of law fully reviewable by this Court. *Johnson v. Workers' Compensation Appeal Board (Dubois Courier Exp.)*, 631 A.2d 693, 696 (Pa. Cmwlth. 1993). Accordingly, our standard of review is *de novo*, and the scope of review is plenary. *The Medical Shoppe, Ltd. v. Wayne Memorial Hospital*, 866 A.2d 455, 459 n.10 (Pa. Cmwlth. 2005).

5

## Post-trial Motions

We first consider whether State Farm was required to file post-trial motions in order to preserve the issues raised in this appeal. Post-trial motions are required by Pennsylvania Rule of Civil Procedure No. 227.1, which states, in relevant part, as follows:

Rule 227.1. Post-Trial Relief

(a) After trial and upon the written Motion for Post-Trial Relief filed by any party, the court may

    (1) Order a new trial as to all or any of the issues; or

    (2) Direct the entry of judgment in favor of any party; or

    (3) Remove a nonsuit; or

    (4) Affirm, modify or change the decisions; or

    (5) Enter any other appropriate order.

(b) Except as otherwise provided by Pa. R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,

    (1) If then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method of trial; and

    (2) Are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

(c) Post-trial motions shall be filed within ten days after

> (1) Verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or
>
> (2) Notice of nonsuit or the filing of the decision in the case of a trial without jury.

PA. R.C.P. No. 227.1. In short, a party must file post-trial motions at the conclusion of a trial in any type of action in order to preserve claims that the party wishes to raise on appeal. Issues not raised in a timely post-trial motion will be deemed waived. *Chalkey v. Roush*, 805 A.2d 491, 494 (Pa. 2002). The Supreme Court has held that Rule 227.1 "speaks only to the post-trial scenario, and not to all instances where reconsideration by the trial court might be salutary." *Newman Development Group of Pottstown, LLC v. Genuardi's Family Markets, Inc.*, 52 A.3d 1233, 1248 (Pa. 2012) (*Newman*).

The parties do not dispute the fact that post-trial motions must be filed at the conclusion of a trial to preserve claims for appellate review. They disagree on whether a "trial" preceded the trial court's December 9, 2015, order ruling that JPC Group was immune. JPC Group argues that because the parties agreed to proceed to a non-jury trial "on the papers," there was "a trial by reading the depositions and other documents submitted to the Court at time of trial." JPC Group Brief at 1. Thereafter, the trial court judge signed a Trial Worksheet, showing that she had conducted a non-jury trial. JPC Group Brief at 2; Exhibit A. JPC Group argues that, in holding that it was an employee of the City, the trial court acted as a fact finder and, thus, its December 9, 2015, order was a "verdict." Because State Farm appealed a "verdict" without first filing post-trial motions, it should be deemed to have waived all of the issues in this appeal.

7

State Farm responds that despite the form of the trial court's order, no "trial" took place. What the parties agreed to, State Farm alleges, was to resolve the immunity issue pre-trial, as a threshold issue in State Farm's motion *in limine*. The trial judge's ruling was based on a review of the motion and the accompanying exhibits. There were no opening statements. State Farm was not on notice that the trial court was conducting a non-jury trial rather than making a pre-trial ruling on a dispositive motion. In fact, the trial court specifically stated that the ruling at issue was made on the motion *in limine*.

To further its argument, State Farm directs our attention to the note that accompanies Rule 227.1(c): "[a] motion for post-trial relief may not be filed to orders disposing of preliminary objections, *motions for judgment on the pleadings or for summary judgment*, *motions relating to discovery or other proceedings which do not constitute a trial*." PA. R.C.P. No. 227.1(c), note (emphasis added). State Farm argues that the trial court's December 9, 2015, order disposed of its motion for summary judgment; therefore, a post-trial motion was unnecessary and, in fact, prohibited.

The Rules of Civil Procedure do not define the term "trial," and they do not address what constitutes a "trial" under Rule 227.1.[5] To ascertain the meaning of the Rules of Civil Procedure, we employ the rules of construction for guidance. *See* PA. R.C.P. Nos. 51-153. Rule 126 provides that the Rules "shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable." PA. R.C.P. No. 126.

---

[5] Regarding non-jury trials, Rule 1038(a) of the Rules of Civil Procedure provides, in relevant part, "the trial of an action by a judge sitting without a jury shall be conducted as nearly as may be as a trial by jury is conducted and the parties shall have like rights and privileges, including the right to move for nonsuit." PA. R.C.P. No. 1038(a).

8

"The object of all interpretation and construction of rules is to ascertain and effectuate the intention of the Supreme Court." PA. R.C.P. No. 127(a). Further, Rule 129(e) provides that "[a] note to a rule or an explanatory comment is not a part of the rule but may be used in construing the rule." PA. R.C.P. No. 129(e).

In *Newman*, 52 A.3d 1233, our Supreme Court considered whether a remand proceeding constituted a "trial" for the purpose of the post-trial motion requirement. The Supreme Court declined to adopt a definition for "trial" under Rule 227.1. However, it stressed that it had "a strong interest in the preservation of consistency and predictability in the operation of our appellate process," and recognized that the consequence of failing to file post-trial motions is significant. *Id.* at 1246. Accordingly, the Supreme Court explained that

> to warrant the heavy consequence of waiver, in a rules schemata designed to secure the just, speedy and inexpensive determination of disputes, *the applicability of the Rule should be apparent upon its face* or, failing that, in clear decisional law construing the Rule.

*Id.* at 1247 (quotation marks omitted) (emphasis added). Stated otherwise, there must be "sufficient predictability to practicing attorneys regarding when post-trial motions must be filed." *Id.* at 1249.

After reviewing the language of Rule 227.1 and the existing case law interpreting the Rule, the Supreme Court concluded that post-trial motions are not required in an appeal from a remand proceeding.[6] *Id.* at 1248. The Court also reviewed the trial court's order on remand, and concluded that the trial court did

---

[6] In making that determination, the Supreme Court did not decide whether prior decisions correctly interpreted Rule 227.1; rather, the Court focused on whether those decisions conveyed notice to practicing attorneys regarding when post-trial motions must be filed.

9

not view its activities on remand as a trial.[7]  The Court concluded that the appellants were not on notice that the remand proceeding constituted a "trial" under Rule 227.1 and, thus, could not be reasonably expected to file a post-trial motion when appealing from the trial court's order on remand.  *Id.*

Applying the above principles to the case at bar, we reject JPC Group's assertion that the trial judge conducted a non-jury trial "on the papers." The trial court's December 9, 2015, order ruled on State Farm's motion *in limine*. As was the case for the appellants in *Newman*, State Farm was not on notice that the trial judge was conducting a trial that would conclude in a verdict.  At the December 7, 2015, hearing, the trial judge acknowledged the multiple motions *in limine*, including the one to preclude JPC Group from presenting evidence on its immunity defense.  The trial judge also observed that immunity was a threshold issue.  Based on assurances by JPC Group's counsel that the witnesses' live testimony would be the same as their deposition testimony, the trial judge decided to rule on the immunity issue based on the depositions and related documents.

On December 9, 2015, when the parties and the witnesses reconvened, the trial court denied State Farm's motion *in limine*.  The trial court explained that it found JPC Group to be an employee of the City when the accident occurred.  No opening statements or oral arguments were made on either December 7 or

---

[7] The trial court, on remand, was directed by the Superior Court to calculate damages based upon the existing record and terms of a lease agreement.  The trial court recalculated the damages as directed.  Its order stated, in relevant part, "[c]ounsel … correctly argues that there is no need nor is it appropriate to take additional evidence in this matter.  The trial has ended and the directives of the Superior Court require that the trial court compute damages of record consistent with its opinion."  *Newman*, 52 A.3d at 1247-48.  The Supreme Court found that the language "the trial has ended" clearly indicated that the trial court did not view its activities on remand as a trial.  *Id.* at 1248.

10

December 9, 2015; no briefs were submitted. Reasonably, State Farm concluded that the trial judge was ruling solely on the motion *in limine*.

Further, Rule 227.1 and the existing decisional law do not provide "sufficient predictability" that appealing from a ruling made "on the papers" would require filing of post-trial motions. By its plain terms, Rule 227.1 does not address the circumstance of a "trial on the papers." Rather, Rule 1038(a) governing non-jury trials provides that "the trial of an action by a judge sitting without a jury shall be conducted *as nearly as may be as a trial by jury is conducted and the parties shall have like rights and privileges….*" PA. R.C.P. No. 1038(a) (emphasis added). The decisional law does not suggest that the Supreme Court contemplated a "trial on the papers" when it adopted Rule 227.1. To the contrary, the Court recognized that certain proceedings, such as motions for summary judgment or motions related to discovery, do not constitute a trial. Case law further provides that when a trial court disposes of a motion in chambers and the jury has heard no evidence, the trial court's disposition is not considered a verdict. *DiGregorio v. Keystone Health Plan East*, 840 A.2d 361, 365 (Pa. Super. 2003). Likewise, here, State Farm was not on notice that its appeal from the trial court's ruling "on the papers" would require it to first file a post-trial motion.

JPC Group argues that the trial court, by reviewing depositions and other documents, made factual findings, which is the hallmark of a "trial" under Rule 227.1. The Supreme Court, however, has declined to adopt such a rule. In *Newman*, the Supreme Court stated:

> [W]e could adopt a more limited rule requiring post-trial motions any time fact-findings were involved, on grounds that resolution of a factual dispute, however narrow or discrete, is sufficiently like a trial to trigger the underlying rationale. But, our task is not to implement a principle animating a Rule, via a

11

waiver holding; rather, the task is to determine whether the language in our Rule, or governing decisional law, fairly conveys that such a requirement already exists, such that noncompliance requires a waiver finding.

*Newman*, 52 A.3d at 1248.

For all of the foregoing reasons, we conclude that the trial court's December 9, 2015, order was not rendered at the conclusion of a trial; rather, it was a ruling on a motion *in limine*. According to Rule 227.1(c) and its accompanying notes, such a ruling does not constitute a trial. State Farm's appeal of an order disposing of a motion *in limine*, therefore, did not require filing of a post-trial motion under Rule 227.1.

## Independent Contractor Status

State Farm argues that the trial court erred in deciding that JPC Group acted as an employee of the City and is immune from liability under Section 8541 of the Tort Claims Act, 42 Pa. C.S. §8541. Rather, JPC Group acted as an independent contractor for the City on the date of the accident. We agree.

Section 8501 of the Judicial Code defines the term "employee" as follows:

> Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis, whether compensated or not and whether within or without the territorial boundaries of the government unit, including any volunteer fireman and any elected or appointed officer, member of a governing body or other person designated to act for the government unit. *Independent contractors under contract to the government unit and their employees and agents and persons performing tasks over which the government unit has no legal right of control are not employees of the government unit.*

12

42 Pa. C.S. §8501 (emphasis added). "While no hard and fast rule exists to determine whether a particular relationship is that of employer-employee or owner-independent contractor, certain guidelines have been established and certain factors are required to be taken into consideration." *Edwards v. Workers' Compensation Appeal Board (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1162 (Pa. Cmwlth. 2016) (quoting *Hammermill Paper Co. v. Rust Engineering Co.*, 243 A.2d 389, 392 (Pa. 1968)). These factors include:

> (1) control of manner the work is done; (2) responsibility for result only; (3) terms of agreement between the parties; (4) nature of the work/occupation; (5) skill required for performance; (6) whether one is engaged in a distinct occupation or business; (7) which party supplies the tools/equipment; (8) whether payment is by time or by the job; (9) whether work is part of the regular business of employer; and, (10) the right to terminate employment.

*Edwards*, 134 A.3d at 1162. The existence of an employer-employee relationship is a question of law based on the facts presented in each case. *Id*.

Although no one factor is dispositive, control over the work to be completed and the manner in which it is to be performed are the primary factors in establishing an employer-employee relationship. *Id.* Control exists where the alleged employer possesses the right to select the employee; the right and power to discharge the employee; the power to direct the manner of performance; and the power to control the employee. *Id.* (citing *American Road Lines v. Workers' Compensation Appeal Board (Royal)*, 39 A.3d 603, 611 (Pa. Cmwlth. 2012)).

Here, JPC Group, a company engaged in the business of excavation and demolition, performs demolition work for the City pursuant to an annual Master Demolition Contract with the City. The Contract identifies JPC Group as a "contractor" and requires it to indemnify the City; carry its own liability insurance;

13

name the City and its employees as additional insureds; and provide security prior to commencing work. There is no guarantee that the City will assign demolition work to JPC Group; rather, the company must submit bids and compete with other qualified contractors. Further, JPC Group can turn down a job that it believes it cannot perform safely.

On the date of the accident, the City chose JPC Group to demolish the fire-damaged building because it possessed "the equipment and the manpower and the experience" to complete the work. R.R. 452a; N.T., 10/24/2014, at 12. JPC Group provided the tools to perform the demolition. It selected the method of demolition and retained control over the demolition process. Neither the Fire Marshal nor the Department of Licensing and Inspection instructed JPC Group on the manner in which the work was performed.

In holding that JPC Group was an employee of the City, the trial court credited the testimony of the Fire Marshal and other City employees. Specifically, the Fire Marshal testified that he set up a "command post" at the scene to watch the demolition process and to discuss what "[he] want[ed] to have the crane operators do." R.R. 133a; N.T., 10/24/2014, at 66. Michael Curran and Richard Quigley, inspectors from the Department of Licensing and Inspection, also testified regarding the standard procedures for a fire-related demolition. Curran testified that the Contractual Services of the Department of Licensing and Inspection had the ability to "hire and fire and pay the contractor." R.R. 565a; N.T., 10/24/2014, at 22. Curran also testified that a meeting was usually held among the Fire Marshals, the inspectors, and the contractor; the Fire Marshals would provide directions, and the inspectors would address safety issues. *Id.* Quigley testified

14

that the Department acted as a "liaison" between the Fire Marshals and the contractor:

> [Question]: So who tells them when to stop taking down a structure?
>
> [Answer]: Well, what happen[s] is … L& I [The Department] is like kind of a liaison between a Fire Marshal and the contractor. So the Fire Marshal says, well, I want them to stop right there and like bring some of the debris out so we can sift through it and look for, you know, whatever they're looking for. And so they'll tell me that. And I'll tell [the contractor] … [to] stop for a minute and spread this debris out so they can check what they want to check."

R.R. 457a; N.T., 10/24/2014, at 30. The trial judge, based on the above testimony, found that the City exercised sufficient control over JPC Group's demolition work to be an employer. We disagree.

Quigley's testimony indicates only that he inspected the progress of JPC Group's work, which "does not require an inference of exclusive control over the manner of performance of the work, but rather only of interest in the result." *Cox v. Caeti*, 279 A.2d 756, 758 (Pa. 1971). Similarly, the meetings held among the Fire Marshal, the inspectors, and JPC Group reflected, at most, a discussion of the desired end result and safety considerations. We therefore conclude that the testimony of these witnesses does not support the trial court's conclusion that the City, through its Fire Marshal or the inspectors, controlled the manner in which JPC Group performed the demolition work.

The trial court also found that the City's payment of JPC Group by the hour was evidence of an employer-employee relationship. Such finding was based on the testimony of Stephen Gallagher, a supervisor at the Contractual Services of the Department of Licensing and Inspection, who testified that the bill JPC Group

15

submitted showed "[t]he men that were there, per hour; the equipment there per hour." R.R. 472a; N.T., 10/24/2014, at 16. This testimony, however, reflects only that JPC Group charged an hourly rate for labor and equipment, which is consistent with the customary practices for many independent contractors. Thus, the trial court's legal conclusion is not supported by the evidence.[8] Moreover, the fact that JPC Group submitted an itemized bill to the City after it completed the work shows that JPC Group was paid by the job, another hallmark of an owner-independent contractor relationship. *Edwards*, 134 A.3d at 1162.

### Conclusion

In summary, we hold that State Farm was not required to file post-trial motions from the trial court's order denying State Farm's motion *in limine*. We further hold that the trial court erred in finding that JPC Group acted as an employee of the City and was immune from liability under Section 8541 of the Tort Claims Act. Accordingly, we reverse the trial court's order and remand for further proceedings on State Farm's negligence claim.

_____
MARY HANNAH LEAVITT, President Judge

---

[8] Even assuming, *arguendo*, that the trial court was correct in finding that JPC Group acted as an employee of the City, such finding would not automatically warrant a conclusion that JPC Group is immune from liability under Section 8541 of the Tort Claims Act, 42 Pa. C.S. §8541. Section 8541 provides, "*[e]xcept as otherwise provided in this subchapter*, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. §8541(emphasis added). If an enumerated exception to immunity in Section 8542 is applicable, the local agency will be liable. 42 Pa. C.S. §8542. The trial court did not consider the applicability of any of the exceptions in Section 8542.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

State Farm Fire and Casualty : 
Company A/S/O JC Investment, Inc.; : 
Restaurant Development, LLC, : 
           Appellants : 
            : 
         v. : No. 916 C.D. 2016
            : 
JPC Group, Inc. : 

## **O R D E R**

AND NOW, this 9th day of March, 2017, the order of the Court of Common Pleas of Philadelphia County dated December 9, 2015, is REVERSED and the above-captioned matter is REMANDED for further proceedings in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge