# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Citizens of Upper Woodmont Group, :
  :
                 Appellant : 
  :
           v. : No. 551 C.D. 2021
  : Submitted: October 11, 2022
Upper Yoder Township Zoning :
Hearing Board, Westmont Hilltop :
School District and Vogue Towers :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:  December 22, 2022


Citizens of Upper Woodmont Group (Objectors) appeal the order of the Cambria County Court of Common Pleas (trial court), on remand from this Court, dismissing with prejudice Objectors' appeal, and affirming the decision of the Upper Yoder Township (Township) Zoning Hearing Board (Board), that granted Vogue Towers' (Applicant) amended application for a variance to construct a 195-foot wireless telecommunications facility (cell tower) on property owned by the Westmont Hilltop School District (School District) that is located in the Township.[1] We vacate and remand this matter again.

---

[1] The trial court's order also denied Applicant's "Motion to Quash [Objectors'] Renewed Land Use Appeal" and Objectors' "Motion to Submit Additional Testimony/Evidence and/or Supplement Record." *See* Reproduced Record (RR) at 1186a.

## I.

In our prior opinion in this matter, we summarized the relevant facts of this case as follows:

> The School District owns a parcel of property that is situate in both the Township and Westmont Borough (Borough). On December 19, 2018, the School District and Applicant submitted a permit application to the Township to construct the cell tower on School District land leased to Applicant. [RR] at 23a-24a. On December 28, 2018, the Township's Zoning Officer denied the permit application, stating that a variance was required because the height of the proposed cell tower violated the height restrictions of the relevant provisions of the Township's Ordinance No. 220 ([Old] Zoning Ordinance). *See* [RR] at 44a.

> On December 19, 2018, Applicant also submitted the variance application with the Board. [RR] at 1a-43a. The portion of the School District's property in the Township is situate in the R-4 One-Family Residential District under the [Township's former] Zoning Ordinance [(Old Zoning Ordinance)]. Under Section 504(A) of the [Old] Zoning Ordinance, by reference to other sections, the permitted uses in the district are limited to: one-family detached dwellings and appurtenant private swimming pools; churches and other places of worship; public, non-commercial, recreation areas; public or private schools; municipal and necessary public utility facility buildings; farm or truck operations; temporary construction structures; and community unit plan development by special exception.

> Under Section 504(C) of the [Old] Zoning Ordinance, by reference to other sections, the height limitation in the district is 75 feet for church steeples or towers. In addition, Section 1001(A) provides, "radio towers or necessary mechanical appurtenances may be erected to [a] height above the limitations of the district, but not to exceed 15 feet over such limitations." As a

2

result, and based on the hearing testimony of the Township Zoning Officer, the Board noted in its decision:

> [Applicant] requested a variance for three items. First and [s]econd requests are a height variance, which is divided into two parts to erect the cell[] tower itself, which would be 195 feet tall, and to erect a fence around the equipment area at the bottom of the cell tower, which would be 8 feet tall. The third request is [the] ability to allow any cell phone carriers and internet companies who wish to use the tower to install equipment needed for their facility, including generators and equipment in the area.

[RR] at 469a.

At the initial Board hearing on January 29, 2019, Tom Mitchell, the School District's acting superintendent, testified regarding the need for communications due to the lack of a cell tower in the area. *See* [RR] at 65a-66a. Robin Melnyk, director for the County's 911 center, testified regarding the lack of coverage for the 911 center based on the absence of a cell tower in the area, and that Applicant has offered to provide the County's 911 center with free space on the cell tower. *Id.* at 74a. She stated that it would cost the County $400,000.00 to construct a tower, and that it is not financially feasible. *Id.* at 75a.

Chief Donald Hess of the Township's Police Department testified in favor of the cell tower. He outlined the lack of communication in the area based on the absence of a cell tower and the topography of the land, and expressed his concerns for the safety of the nearby Laurelwood elder apartment, convalescent, and personal care center and the high school. [RR] at 78a-82a. He testified regarding an incident where he could not use his police radio or cell phone to respond in an emergency situation. Chief Tim Reitz of the Township's Fire Company also testified about his safety concerns for the Laurelwood center and the high school. *Id.* at 82a-88a.

3

Robert Fatula, a security consultant with Gittings Protective Security, testified that his job is to give advice and set policies and procedures for surviving things such as an active shooter, a bomb threat, and natural disasters. [RR] at 89a-91a. He stated that an initial call to the 911 center to get police on the scene is critical when an armed person is present, and he is terrified of the inability to make a call from the site when outside. *Id.* He testified that there are no other school districts in the County without cell service due to the lack of a cell tower. *Id.* at 92a.

Three Township residents testified in support of the application. Peter Hassett testified that, due to the lack of cell phone service, he started an on-line petition in favor of the cell phone tower that gathered 1,200 signatures. [RR] at 104a-106a. He stated that Applicant contacted him regarding the petition, and a representative of Applicant attended a School District board meeting because of the appropriateness of the proposed site. *Id.* A copy of the petition was entered into evidence. *Id.* at 106a. Brenda Molnar testified that she had very spotty cell phone service, many people are terminating their landline telephones, and the lack of cell phone service is a safety issue at the school and Laurelwood. *Id.* at 107a-109a. Tim Reitz testified that he was thinking of purchasing a home in the area, but declined to do so due to the lack of cell phone service and purchased one in a different area. *Id.* at 109a-110a. At its conclusion, the Board voted to continue the hearing so that representatives for Applicant could appear to answer questions from the Board and nearby property owners who opposed the application. *Id.* at 153a.

At the second Board hearing on March 5, 2019, Pat Tant, a representative for Applicant, answered questions posed by the Board and by attendees at the hearing. *See* [RR] at 322a-330a, 335a-357a. She testified that she has looked at a number of sites and has had over 5,000 towers constructed. *Id.* at 323a. She visited the proposed site at the school a few times, and viewed it with the principal and Ryan McBreen, a representative for Sabre Industries (Sabre), the manufacturer of the tower. *Id.* at 322a-323a, 349a-350a. She stated that they initially considered two sites for the tower, but decided upon the proposed site

4

based on the topography, proximity to the school, and access to the tower. *Id.* at 323a-327a, 348a-349a. She testified that they conducted a "balloon test," whereby Sabre used a 36-inch red balloon to obtain photographs that approximate what the proposed cell tower would be and what it would look like when constructed. *Id.* at 328a-329a. She stated that the cell towers that she constructs do not actually fall over because they are designed to buckle, so she asked Sabre to include a 49-foot fall zone around the proposed tower to prevent it from falling on the school or any homes in the area. *Id.* at 333a-335a, 348a. She testified that if anything was to fall from the cell tower, including ice, it would fall within the compound's 60-foot area. *Id.* at 335a.

Tant also stated that it will not have to be lighted due to its height and that the cell providers using the cell tower will pay for its electricity. [RR] at 336a-336a. She testified that the providers using the cell tower decide on whether a generator is installed and that, if used in an emergency, it will only emit a noise of 64 decibels, which is comparable to an electric shaver or a dishwasher. *Id.* at 335a-338a. She stated that it will not be a HAZMAT site because it must be fully compliant with the federal Environmental Protection Agency checklist to ensure that it is a clean site. *Id.* at 338a-339a. She testified that the cell tower will also comply with the Federal Communications Commission's radio frequency emission standards, which are typically thousands of times below safety limits, and that all the emitting equipment is at the top of the tower and not at ground level. *Id.* at 339a-341a. She stated that although the standard for the surrounding fence is a height of six feet, an eight-foot fence is proposed for extra safety and that she is not aware of anyone ever climbing over the fence at a cell tower site. *Id.* at 341a-342a. She testified that the school is paid for the leased property so the entire community benefits from the increased educational revenue. *Id.* at 345a. She stated that the reports from the Cellular Telecommunications Industry Association over the last three years indicate that more than 50% of all new home buyers are looking for wireless connectivity, and the lack of it is detrimental to property values so the cell tower will not negatively affect

5

property values. *Id.* at 345a-347a, 355a-356a. She testified that the local EMS will be provided space at the top of the cell tower. *Id.* at 354a. Finally, she stated that the construction of the tower will not alter the essential characteristics of the neighborhood. *Id.* at 355a-356a.

McBreen also testified, explaining how the cell towers are constructed under the 2015 International Building Code and American National Standards Institute standards to buckle and fall onto itself rather than fall over, with a theoretical fall zone of 49 feet. [RR] at 331a-333a, 334a-335a. He testified that the only cell tower that he has known to collapse was caused by a worker who had inadvertently started a fire while working on the tower. *Id.* at 349a. He stated that "climbing pegs" are used by the construction and maintenance workers on the cell tower, but that they are removed when the work has been completed and stored on-site in a steel cabinet that requires a code to be opened. *Id.* at 343a-344a. He testified that the 195-foot height was chosen because a taller tower is cost prohibitive and the Federal Aviation Administration requires lights on a structure over 200 feet. *Id.* at 350a-351a. He stated that one of the factors considered in determining the site was the location of a utility substation within a few hundred feet of the proposed tower. *Id.* at 356a-357a.

On April 9, 2019, the Board issued a decision granting the Application, in which it found all of the foregoing testimony credible. *See* [RR] at 470a-474a. Based on the foregoing, the Board concluded as law: (1) the property is located in an R-4 Residential District under the [Old] Zoning Ordinance; (2) the request for the height variance, use variance, and the right for cell phone carriers and internet companies to install equipment and generators at the site is granted; (3) the height variance for the cell tower and fence includes the ability to install their own equipment, including generators, after the tower is completed; (4) the most credible testimony is the testimony from Applicant's representatives, the School District, the emergency personnel from the Police and Fire Departments, and the 911 administrator rather than those in opposition to the Application; and (5) the Laurelwood

6

Convalescent and Personal Care Centers, and the apartments and the high school, are in the area and are subject to the same problems with cell phone and emergency phone service. [*Id.*] at 474a. Objectors appealed the Board's decision to the trial court.

Prior to argument in the trial court, pursuant to Section 1005-A of the Pennsylvania Municipalities Planning Code (MPC),[2] Objectors filed a motion for the opportunity to present additional evidence to the court on the issue of whether the cell tower site is situate in the Borough and not the Township and thereby divesting the Board of jurisdiction to consider or dispose of the Application. *See* [RR] at 667a. The trial court denied the motion [on the alternate bases that Objectors did not have standing to question the Board's jurisdiction or that Objectors waived the issue of the Board's jurisdiction by failing to properly raise and preserve the issue before the Board. *See id.* at 769a-770a.

With respect to the requisite unnecessary hardship underlying the Board's grant of a variance pursuant to Section 1702(B) of the Township's [Old] Zoning Ordinance,[3] the trial court determined:

---

[2] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11005-A.

[3] Section 1702(B) of the Old Zoning Ordinance states, in pertinent part:

B. Powers Relative to Variations - When it is alleged that the provision of the [Old] Zoning Ordinance inflict unnecessary hardship upon the applicant, the board may grant a variance if the following conditions are found relevant in a given case:

1. That there are unique physical circumstances or conditions including irregularity, narrowness or shallowness or lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally in the neighborhood or district in which the property is located.

**(Footnote continued on next page…)**

Certainly, the property is subject to an unnecessary hardship: the lack of cellular communications that prohibits the safe and efficient operation of a Junior-Senior High School, impedes the development of safety protocol, and endangers the well-being of students, faculty and staff. Moreover, the law of our Commonwealth is clear that "modernization or expansion of a business will satisfy the [unnecessary hardship element] where 'the expansion or modernization . . . [is] a matter of necessity for the business rather than merely to take advantage of an increase in business.'" *Richards v.* [*Borough*] *of Coudersport Zoning* [*Hearing Board*], 979 A.2d 957, 967 (Pa. Cmwlth. 2009) [(citation omitted)]. The record is clear that [the] School District's inability to modernize the property in accordance with accessible safety standards is unacceptable, unnecessary hardship.

---

2. That because of such physical circumstances or conditions there is no possibility that the property can be developed in strict conformity with the provisions of the [Old] Zoning Ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

3. That the unnecessary hardship has not been created by the applicant.

4. That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use of development of adjacent property, not be detrimental to the public welfare.

5. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

In granting any variance, the Board may attach such reasonable conditions and safeguards as it may deem necessary.

*See also* Section 910.2 of the MPC, 53 P.S. §10910.2 (containing all of the foregoing provisions).

[RR at 773a]. The trial court also affirmed the Board's determination that the remaining elements required for the grant of a variance are supported by substantial evidence. *See id.* at [773a-776a]. Accordingly, the trial court issued an order dismissing with prejudice Objectors' appeal and affirming the Board's decision, *see id.* at [776a], and Objectors filed [an] appeal [to this Court].

*Citizens of Upper Woodmont Group v. Upper Yoder Township Zoning Hearing Board* (Pa. Cmwlth., No. 1215 C.D. 2019, filed July 9, 2020), slip op. at 1-9.

On appeal[4] in that case, Objectors argued, *inter alia*, "that the trial court erred or abused its discretion in denying their motion for the opportunity to present additional evidence pursuant to Section 1005-A of the MPC" in that "the trial court erred in refusing to receive additional testimony and evidence relating to the 'critical jurisdictional question' of whether the Board possessed jurisdiction to grant the variances . . . because the cell tower is actually located in the Borough, and not in the Township." *Citizens of Upper Woodmont Group*, slip op. at 9. This Court noted, in relevant part:

> In this case, it is undisputed that the District's mailing address is within the Township. However, the attachments to the variance application submitted to the Board call into question whether or not the cell tower site is located in the Borough and not the Township, *see* [RR] at 15a, 35a, 37a, 39a-40a, thereby divesting the Board of jurisdiction to consider the application under the MPC. More specifically, when the dashed line on the County's GIS map showing the boundary between the Borough and the Township, [*id.*] at 35a, is compared with the site plans for the tower, *id.* at 15a, 39a-40a, it appears that the cell

---

[4] As this Court has explained: "In a land use appeal where the trial court does not take additional evidence, our review is limited to determining whether the ZHB abused its discretion or committed an error of law. As to questions of law, our standard of review is *de novo* and our scope of review is plenary." *Board of Commissioners of Cheltenham Township v. Hansen–Lloyd, L.P.*, 166 A.3d 496, 501 n.4 (Pa. Cmwlth. 2017) (citations omitted).

tower will be constructed within the Borough and not within the Township.

*Id.*, slip op. at 9. As a result, we concluded that "the trial court erred and/or abused its discretion in denying Objectors' request to receive additional evidence relating to the location of the proposed cell tower on the alternate bases that Objectors did not have standing to question the Board's jurisdiction, or that the issue of the Board's jurisdiction was waived by Objectors' failure to properly raise and preserve the issue before the Board." *Id.* at 10-11 (citations omitted).

Ultimately, on July 9, 2020, this Court held:

> Pursuant to the MPC, the Second Class Township Code,[5] the Borough Code,[6] and *Appeal of Davis*[, 644 A.2d 220, 223 (Pa. Cmwlth. 1994)], when presented with Objectors' motion to present additional evidence, it was incumbent upon the trial court to determine: (1) the boundary line between the Borough and the Township; (2) where the cell tower site is situate in relation thereto; and (3) whether or not the Board possessed jurisdiction to dispose of the variance application in the first instance. As a result, the matter will be remanded to the trial court to dispose of the foregoing matters, and to receive additional relevant evidence if it deems such evidence is necessary.

*Citizens of Upper Woodmont Group*, slip op. at 11. Accordingly, we issued an order remanding the matter to the trial court "for proceedings consistent with the foregoing memorandum opinion." *Id.*

---

[5] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§65101-67201.

[6] 8 Pa. C.S. §§101-3501.

10

## II.

On August 20, 2020, the Township enacted Ordinance No. 287 (New Zoning Ordinance), which amended and replaced the Old Zoning Ordinance. *See* New Zoning Ordinance §101 ("Be it further Enacted and Ordained that . . . [the Old Zoning Ordinance is] hereby repealed."); New Zoning Ordinance §106 ("The effective date of this ordinance shall be five days after its adoption by the [Township's] Board of Supervisors."). In relevant part, New Zoning Ordinance Section 202 defines "Telecommunications Tower," a term not defined in the Old Zoning Ordinance, as "[a] structure supporting equipment that receives and/or transmits signs, signals, messages, words, writings, images and sounds or information of any nature by wire, radio, optical or other electromagnetic systems, as further regulated under Section 1011 [(relating to telecommunications towers as a use by special exception in the C-1, C-2, and C-3 Zoning Districts)]." In addition, New Zoning Ordinance Section 504(A) provides for "[s]mall site telecommunications facilities, as per Section 1013[,7]" as a permitted use in the R-4 One-Family Residential District; however, New Zoning Ordinance Section 504(B) states that "Telecommunications Towers" are a non-permitted use in the R-4 District. Finally, New Zoning Ordinance Section 1702(B) outlines the criteria required for the grant of a variance to the New Zoning Ordinance's provisions, containing the same provisions as the prior version of Section 1702(b) in the Old Zoning Ordinance.

---

[7] New Zoning Ordinance Section 1013(1) provides that "[s]mall site telecommunications facilities may be located in any area of the Township, in compliance with zoning district height regulations, or on utility poles located in a street right-of-way, not exceeding fifty (50) feet in height."

On October 19, 2020, following a number of status conferences regarding the remand by this Court, the trial court notified the parties that Applicant "intended to amend its application for erection of a cell tower to ensure that it is within the Township limits." RR at 869a.[8] Over Objectors' objections, *see id.* at 870a-872a, on October 27, 2020, Applicant submitted an amended application to construct the cell tower on the School District's property. *See id.* at 873a-914a. The amended application was identical to the original application except for the replacement of the three mapping pages, which show that the site for the cell tower was moved to the southeast on the parcel. *Compare id.* at 35a, 37a *with* 885a-886a; *see also id.* at 984a, 987a.

That same day, Applicant filed a motion to remand the matter to the Board alleging that "[a]s the only issue currently pending before the [c]ourt is whether or not the proposed construction site, as set forth in the Amended Application, is fully within the jurisdiction of [the] Township, and the [MPC] specifically provides that zoning jurisdiction vests solely in the local government in which the property is located, this [c]ourt must remand this matter to the [Board] for such determination." RR at 919a. On October 28, 2020, the trial court issued an order granting Applicant's motion and remanding the matter to the Board "for a determination as to whether, based on the Amended Application, the cell tower construction site falls within the physical boundaries of [the] Township." *Id.* at 967a.

---

[8] At one of the status conferences, the trial court directed Objectors to submit a survey or other documentation by August 17, 2020, to establish that the proposed site for the cell tower is not within the Township's boundaries. *See, e.g.*, RR at 1172a. On August 17, 2020, via email, Objectors submitted a letter from Jeffrey Ripple, PLC, the Project Manager III/Chief of Surveys for CME Engineering. *Id.* at 866a-867a. In the letter, Ripple stated, in relevant part, that "[u]tilizing all the records and tools available to CME, it is the professional opinion of this surveyor, that the location of the [cell] tower site . . . falls well within the bounds of [the] Borough." *Id.* at 866a.

12

On December 10, 2020, the Board conducted a public hearing on the amended application and admitted the record from the prior proceedings on the old application for a variance into the record. *See* RR at 972a-1012a. At the hearing, Michael Sandifer, the Project Manager for the site development with respect to the amended application, testified for Applicant. *Id.* at 981a. He testified that he "developed a site test that we believe was well inside the [Township's] boundary," and hired Point to Point Surveying (Point to Point) to survey the property based on the sketch that he had provided. *Id.* at 983a. He asked Point to Point to revise its survey map to include the boundary line between the Borough and the Township. *Id.* at 985a-986a. He stated that he believed that he fulfilled his task of assuring that the new construction location falls within the Township's physical boundaries. *Id.* at 986a.

David Miller, Point to Point's Chief Operating Officer, testified for the Applicant as well. *See* RR at 988a-1001a. He stated that he is a licensed professional land surveyor, he oversees all drafting and workflow, and he reviews all of the work performed by the field crews and the survey technicians. *Id.* at 989a. He testified that the new construction site falls within the Township's physical boundaries. *Id.* at 996a-997a.

Finally, at the hearing, Brian Litzinger, counsel for Objectors, conceded on the record that the new cell tower construction site is "definitively" in the Township. RR at 1008a. In addition, after initially indicating that Objectors would present Ripple as a witness, *id.* at 1005a, he ultimately apologized to the Board and stated that his witness was not present to testify. *Id.* at 1007a. Importantly, Litzinger did not ask for a continuance to present Ripple's testimony at a later Board hearing. *See id.* In presenting argument, Litzinger asserted that "to allow [Applicant] to come

13

back nearly two years later and seek to amend an application rather than file a new application we believe is beyond your powers of the [B]oard under the MPC. There are substantial circumstances that have changed in the inter[im]." *Id.* at 1009a. Ultimately, at the conclusion of the hearing, the Board voted to grant the amended application based upon its determination that the new cell tower site is within the Township. *Id.* at 1010a-1011a.

On December 23, 2020, the Board issued a written decision in which it found Sandifer's and Miller's testimony and evidence credible, in addition to Litzinger's concession that the new site is "definitely" in the Township. RR at 1039a-1040a. Based upon the credible evidence, the Board concluded that the new site for the cell tower is in the Township and, as a result, the Board has jurisdiction over Applicant's amended variance application. *Id.* at 1041a.

On January 22, 2021, Objectors filed a Notice of Renewed Land Use Appeal of the Board's December 24, 2020 decision. *See* RR at 1043a-1060a. In addition to the claims raised on the merits of the applications, Objectors asserted that the trial court erred in: (1) granting Applicant leave to amend the application outside of the time provided for in Section 908 of the MPC;[9] (2) "[a]llowing, considering,

---

[9] In relevant part, Section 908(1.2) of the MPC states:

> (1.2) The first hearing before the board . . . shall be commenced within 60 days from the date of receipt of the applicant's application, unless the applicant has agreed in writing to an extension of time. Each subsequent hearing before the board . . . shall be held within 45 days of the prior hearing, unless otherwise agreed to by the applicant in writing or on the record. An applicant shall complete the presentation of his case-in-chief within 100 days of the first hearing. Upon the request of the applicant, the board . . . shall assure that the applicant receives at least seven hours of hearings within the 100 days, including the first hearing. Persons

**(Footnote continued on next page…)**

14

and ultimately granting [Applicant's] amended application when such was substantially different from the original application as to the site"; (3) "[a]llowing, considering, and ultimately granting [Applicant's] amended application in light of" the Township's enactment of the New Zoning Ordinance, and "based upon substantial changes in the [New Z]oning [O]rdinance and [Applicant's a]mended [a]pplication, the [Board] should have rejected the [a]mended [a]pplication and required a new application to apply the [New Z]oning [O]rdinance"; and (4) "[a]llowing, considering, and ultimately granting [Applicant's] amended application when [the] original application contained a fatal defect or error in representing a proposed site located outside the geographical boundaries of [the] Township, thus depriving [the Board] of jurisdiction as to the original proceedings and renderings all proceedings void." *See id.* at 1048a-1049a.

That same day, Objectors filed a motion to submit additional testimony and evidence and/or to supplement the record that was created before the Board. *See* RR at 1061a-1069a. Specifically, pursuant to Section 1005-A of the MPC,[10]

---

> opposed to the application shall complete the presentation of their opposition to the application within 100 days of the first hearing held after the completion of the applicant's case-in-chief. An applicant may, upon request, be granted additional hearings to complete his case-in-chief provided the persons opposed to the application are granted an equal number of additional hearings. Persons opposed to the application may, upon the written consent or consent on the record by the applicant and municipality, be granted additional hearings to complete their opposition to the application provided the applicant is granted an equal number of additional hearings for rebuttal.

53 P.S. §10908(1.2).

[10] 53 P.S. §11005-A. Section 1005-A states, in pertinent part:

**(Footnote continued on next page…)**

15

Objectors sought to introduce Ripple's testimony and evidence demonstrating that the original site for the cell tower was not located in the Township thereby divesting the Board of jurisdiction in this matter. *See id.* at 1063a-1064a. On March 31, 2021, the trial court conducted a hearing on Objectors' appeal and motion to submit additional testimony and evidence. *See id.* at 1162a-1182a.

On April 16, 2021, the trial court issued the instant order on appeal. *See* RR at 1183a-1187a. In relevant part, the order states:

> 1) [Applicant's] "Motion to Quash Renewed Land Use Appeal" is **DENIED**. In reaching this determination, we note that said Motion is largely premised upon arguments that we previously addressed via detailed Order and Opinion of June 13, 2019.
>
> 2) [Objectors'] "Motion to Submit Additional Testimony/Evidence and/or Supplement Record" is

If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body . . . whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence. . . . If the record below includes findings of fact made by the . . . board . . . whose decision or action is brought up for review and the court does not take additional evidence . . . the findings of the . . . board . . . shall not be disturbed by the court if supported by substantial evidence. If the record does not include findings of fact or if additional evidence is taken by the court . . . the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any.

As this Court has stated: "In a zoning appeal, a court's obligation to hear additional testimony under this section, is premised upon [the] appellant's demonstration that the record was incomplete either because [the] appellant was refused the opportunity to be fully heard, or that relevant testimony was excluded." *Appeal of Little Britain Township*, 651 A.2d 606, 613 (Pa. Cmwlth. 1994) (citations omitted). As outlined above, there is no indication that Objectors were either refused the opportunity to be fully heard or that any proffered relevant evidence was excluded during the prior proceedings below.

16

**DENIED**. A review of the December 10, 2020 Board hearing transcript confirms that [Objectors] w[ere] afforded an opportunity to contact Mr. Ripple upon his failure to appear. However, when efforts were not fruitful, [Applicant] is correct; [Objectors] did not request a continuance for Mr. Ripple's testimony. Our Opinion and Order of July 30, 2019 contains a detailed analysis relative to the trial court's discretion in allowing additional evidence. We do not believe that [Objectors] ha[ve] satisfied the standard contained therein.

3) [Objectors'] "Notice of Renewed [sic] Land Use Appeal as to December 2020 Decision of Upper Yoder Township Zoning Hearing Board" is **DISMISSED WITH PREJUDICE** and the decision of the Board is **AFFIRMED**. As set forth at length in our July 30, 2019 Opinion/Order, our standard of review is limited to determining whether the Board "committed a manifest abuse of discretion or an error of law." *Valley View Civic Assoc*[*iation*] *v. Zoning B*[*oard*] *of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). We may reach a conclusion that the Board abused its discretion only if its "findings are not supported by substantial evidence." *Id.* at 640. Also, Pennsylvania law is clear that the governing body, as factfinder, is the sole judge of credibility and conflict in testimony, and has the power to reject even uncontradicted testimony if the governing body finds that testimony lacking in credibility. *Constantino v. Zoning Hearing B*[*oard*], 618 A.2d 1193, 1196 (Pa. Cmwlth. 1992).

In its December 23, 2020 Decision, the Board deemed the testimony of [Applicant's]/School District's witnesses Michael Sandifer and David Miller credible, and both testified that, consistent with a new survey, the amended site location of the cell tower is in [the] Township. Additionally, the Board found that counsel for [Objectors] admitted at the December 10, 2020 Hearing that the amended site is "definitively in [the] Township." The Board also found that [Objectors] presented no contradictory evidence relative to the placement of the construction site or the tower not being in [the] Township.

17

Accordingly, we find that the Board's decision was in accordance with the parameters of the instructions of our remand, and that same was supported by substantial evidence. While we acknowledge [Objectors'] argument relative to [Applicant's] inability to amend its application, [Objectors] ha[ve] presented no authority in this regard.

*Id.* at 1186a-1187a (emphasis in original). Objectors then filed the instant appeal of the trial court's order.

## III.

On appeal, Objectors claim, *inter alia*, that the trial court erred in permitting Applicant to amend the application and remanding the matter to the Board to consider the merits of the amended application because this Court's order remanding the case directed the trial court to determine: (1) the location of the boundary line between the Township and the Borough; (2) where the original tower site was situate in relation to that municipal boundary line; and (3) whether the Board had jurisdiction to adjudicate the original application. Notwithstanding this plain directive, the trial court failed to engage in any proceedings aimed at addressing any of the foregoing determinations. Simply, the Board lacked jurisdiction to consider and dispose of the original application, and the lack of jurisdiction should have ended the matter without proceeding on any further consideration. As a result, the trial court should have overturned the Board's variance approval, and directed Applicant to file a new independent application for a variance under the New Zoning Ordinance.

Applicant and the School District counter that the trial court properly remanded the matter to the Board because Section 1005-A of the MPC grants the trial court the authority to remand the case to the Board to receive additional evidence. In our remand opinion, we directed the trial court "to dispose of the

18

foregoing matters, and to receive additional relevant evidence *if it deems such evidence is necessary*." RR at 859a (emphasis added). Contrary to Objectors' argument, the law of this Commonwealth, and this Court's opinion in this case, the trial court was not required to take additional evidence and was granted discretion to determine whether additional evidence was necessary. The trial court properly remanded the matter to the Board for the reception of such evidence.

Moreover, the amendment of the Township's Old Zoning Ordinance is of no moment. Section 1702(B) of both the Old Zoning Ordinance and the New Zoning Ordinance, in addition to Section 910.2 of the MPC, outline the necessary criteria for the grant of a variance and a variance was required under either ordinance. Objectors cannot dictate which entity, either the Board or the trial court, may properly receive evidence as to the issues at hand. It is clear that the trial court was permitted, if not required, to remand this matter to the Board to receive additional evidence regarding the location of the proposed cell tower. *See, e.g.*, Section 909.1 of the MPC, 53 Pa. C.S. §10909.1 (outlining the "exclusive jurisdiction" of a zoning hearing board).

Although not cited by any of the parties, Pa. R.A.P. 2591(a) states, in pertinent part: "On remand of the record the court . . . below shall proceed in accordance with the judgment or other order of the appellate court[.]" *See also* Section 706 of the Judicial Code, 42 Pa. C.S. §706 ("An appellate court may affirm [or] vacate . . . any order brought before it for review, and may remand the matter and . . . require the entry of such appropriate order . . . as may be just under the circumstances.").

In this regard, this Court has explained:

"[I]t has long been the law in Pennsylvania that following remand, a lower court is permitted to proceed only in

19

accordance with the remand order." *Commonwealth v. Sepulveda*, [144 A.3d 1270, 1280 n.19 (Pa. 2016)]. In *Levy v. Senate of Pennsylvania*, 94 A.3d 436 (Pa. Cmwlth.), *appeal denied*, [] 106 A.3d 727 (Pa. 2014), which the Supreme Court cited with approval in *Sepulveda*, this Court explained: "Where a case is remanded for a specific and limited purpose, 'issues not encompassed within the remand order' may not be decided on remand. A remand does not permit a litigant a 'proverbial second bite at the apple.'" *Levy*, 94 A.3d at 442 (quoting *In re Indep*[*endent*] *Sch*[*ool*] *Dist*[*rict*]. *Consisting of the Borough of Wheatland*, 912 A.2d 903, 908 (Pa. Cmwlth. 2006)).

*Marshall v. Commonwealth*, 197 A.3d 294, 306 (Pa. Cmwlth. 2018), *aff'd*, 214 A.3d 1239 (Pa. 2019); *see also Commonwealth v. Tick, Inc.*, 246 A.2d 424, 426 (Pa. 1968) (holding that a trial court's duty on remand is to "comply strictly with our mandate and such compliance require[s] the court to proceed in a manner consistent with the views expressed in our opinion."); *Commonwealth v. Null*, 186 A.3d 424, 429 (Pa. Cmwlth. 2018) ("[F]ollowing remand, the trial court below must comply strictly with this Court's mandate and has no power to modify, alter, amend, set aside, or in any measure disturb or depart from this Court's decision as to any matter decided on appeal.").

As outlined above, on remand, the trial court was directed to determine whether the site of the proposed cell tower in the original application was within the Township and, therefore, whether the original application for the variance is within the Board's jurisdiction. *See Citizens of Upper Woodmont Group*, slip op. at 11. Nevertheless, the trial court had wide discretion to determine the nature of the proceedings to comply with our directive.

Indeed, as the Supreme Court has explained:

[A]lthough Pa.R.A.P. 2591 requires the court or other government unit on remand to "proceed in accordance

20

with the judgment or other order of the appellate court," it does not require the court or government unit to utilize any specific mode of compliance with a general remand order, such as a trial or evidentiary hearing. Consequently, when an appellate court remands for "further proceedings" there is no "one size fits all" talismanic definition for those terms which is applicable to all cases and situations. It is axiomatic that the facts and procedural history of each case as it developed in the lower court or administrative agency will be different when considered by an appellate tribunal, and, thus, if that tribunal determines that a remand for further proceedings is warranted, the nature of those proceedings will necessarily vary depending on the specific circumstances presented by each individual case. *See Newman Development Group of Pottstown, LLC v. Genuardi's Family Markets, Inc.*, [52 A.3d 1233, 1247 (Pa. 2012)] (explaining that "remands may encompass a variety of proceedings" including remand for an opinion or explanation).

Thus, every remand order directing that further proceedings be conducted must necessarily be examined in conjunction with the opinion of the appellate tribunal and the particular facts, circumstances, and procedural history of the case in order to determine what the lower court or tribunal is required to do upon return of the case to it. It must be emphasized that, when a case is returned to a lower court or administrative agency with such a directive, those tribunals have usually already conducted some fact-finding or legal analysis in the case and, accordingly, this acquired familiarity with the already developed record allows the court or administrative agency considerable discretion to choose the specific type of proceedings it will conduct in order to fulfill the purposes for which the appellate court has ordered remand.

*SugarHouse HSP Gaming, L.P. v. Pennsylvania Gaming Control Board*, 162 A.3d 353, 371 (Pa. 2017).

Thus, when we issued an order remanding the matter to the trial court "for proceedings consistent with the foregoing memorandum opinion," the trial court

21

was granted "considerable discretion to choose the specific type of proceedings" that should be conducted on remand. *Id.* We cannot say that the proceedings directed by the trial court on remand of the instant matter do not fall within the ambit of our directions on remand. *See id.* at 371-72 ("While the [b]oard was certainly free under our remand order to conduct additional hearings and receive supplementary evidentiary submissions if it considered that course of action necessary to comply with our directive, there was nothing in our order which compelled it to do so. Therefore, we deem the particular proceedings which the [b]oard undertook in response to our order . . . to be a suitable mode of compliance."). As a result, Objectors' claim in this regard is without merit.

## IV.

However, Objectors also claim, *inter alia*, that the trial court erred in affirming the Board's decision because the record evidence does not support the grant of a variance as requested in the Amended Application. Specifically, Objectors contend that the trial court erred in affirming the Board's decision because the record evidence does not meet the five requirements supporting the grant of a variance provided in Section 1702(B) of the New Zoning Ordinance and the Old Zoning Ordinance, and Section 910.2 of the MPC with respect to the Amended Application. We agree.

As extensively, and exhaustively, outlined above, the evidence presented in the first proceeding on Applicant's original application to construct the cell tower on the original site addressed the five factors outlined in the Township's Zoning Ordinances and Section 910.2 of the MPC. *See Citizens of Upper Woodmont Group*, slip op. at 2-9. Indeed, with respect to the fourth and fifth of these mandatory

22

factors in this appeal, Applicant and the School District cite to the record evidence in the prior proceeding that demonstrates that the proposed cell tower at the original site in the first application does not adversely impact public health, safety, and welfare,[11] and is the minimum variance that will afford relief.[12] However, there is absolutely *no* record evidence demonstrating that the *new* site for the proposed cell tower as provided in the Amended Application meets all of the mandatory requirements supporting the grant of a variance under either the Zoning Ordinances or the MPC.

It is well settled that the Board's decision must be reversed where, as here, there is not substantial record evidence supporting the Board's findings of fact and conclusions of law with respect to the grant of a variance. *See, e.g.*, *Larsen v. Zoning Board of Adjustment of City of Pittsburgh*, 672 A.2d 286, 289-90 (Pa. 1996) ("The failure of a zoning board to consider each requirement of a zoning ordinance prior to granting a variance is an error of law. Here, the zoning board failed to consider each of these requirements. Furthermore, the record reveals that appellants

---

[11] *See, e.g.*, Brief for Applicant at 27 ("From a community standpoint, [the School District] and [Applicant] submitted evidence *that there will be minimal visual impact, that the site will be within all of the necessary setbacks,* and that the site will be within a secure, fenced, landscaped compound.") (emphasis added); Brief for the Board at 21 ("Further, the record shows evidence was presented and relied upon regarding *the minimal visual impact on the neighborhood*, the increased property values, and community support for the project.") (emphasis added).

[12] *See, e.g.*, Brief for Applicant at 29 ("[Applicant and the School District] presented substantial, uncontradicted, and credible evidence that *no other location on the [School District's p]roperty will provide the necessary coverage or will be adequate for the intended construction.* The proposed site for the construction of the [cell tower] *is the only site which will provide the proper height, was appropriately leveled, and - from a safety standpoint - was close enough to the Junior-Senior High School to prevent unintended use of the facility.*") (emphasis added); Brief for the Board at 21 ("[C]redible evidence was presented by [the School District and Applicant] *that no other site on the subject property would provide the necessary coverage and that the site chosen provides the optimal height, is properly leveled, and is close enough to the school to prevent unintended use.* RR at 323a-324a and 472a.") (emphasis added).

23

failed to provide evidence that would satisfy even the first criteria [sic]. Accordingly, appellants' claim [of error] must fail.") (citation omitted); *Valley View Civic Association*, 462 A.2d at 640 ("We may conclude that the [b]oard abused its discretion only if its findings are not supported by substantial evidence. By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citations omitted). As a result, we are constrained to again vacate the trial court's order affirming the Board's decision, and remand the matter to the trial court to receive evidence demonstrating that the new site for the proposed cell tower on the School District's property as provided in the Amended Application meets all of the required elements supporting the grant of a variance.[13]

Accordingly, the trial court's order is vacated, and the case is remanded to the trial court for proceedings consistent with this memorandum opinion.

MICHAEL H. WOJCIK, Judge

---

[13] Based on our disposition of this claim, we will not consider the remaining issues raised in this appeal.

24

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Citizens of Upper Woodmont Group, :
                                   :
                       Appellant    :
                                     :
               v.                 : No. 551 C.D. 2021
                                     :
Upper Yoder Township Zoning     :
Hearing Board, Westmont Hilltop    :
School District and Vogue Towers   :

# **O R D E R**

AND NOW, this 22nd day of December, 2022, the order of the Cambria County Court of Common Pleas dated April 16, 2021, is VACATED, and the above-captioned matter is REMANDED to that court for proceedings consistent with the foregoing memorandum opinion.

Jurisdiction is relinquished.

_____
MICHAEL H. WOJCIK, Judge